No. 24,648.

L. M. COIL, *Appellee,* v. JOHN BARTON PAYNE as Agent of Director General of Railroads, *Appellant.*

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Employers' Liability Act—When Employee is Employed in Interstate Commerce.* The rule established by the supreme court of the United States that a workman repairing the track of a railroad over which interstate as well as local business is done is engaged in interstate commerce, and if negligently injured may maintain an action under the federal employers' liability act, applies although the road is situated wholly in one state.

2. SAME—*Negligence—Running Push Car Ahead of Motor Car.* The evidence is held to sustain a finding that it was actionable negligence to run a push car ahead of a motor car instead of pulling it.

Appeal from Lincoln district court; DALLAS GROVER, judge. Opinion filed November 10, 1923. Affirmed.

*David Ritchie,* of Salina, for the appellant.

*John J. McCurdy,* of Lincoln, and *W. W. McCanless,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

MASON, J.: L. M. Coil recovered a judgment under the federal employers' liability act against the government agent in control of railroads, on account of injuries received by him while working as

a track laborer repairing the roadbed of the Salina Northern railroad, and the defendant appeals.

1. One of the appellant's contentions is that the plaintiff was not engaged in interstate commerce at the time of his injury, in which case the federal act would not apply. The Salina Northern company owns a railroad lying wholly in the state of Kansas, but used for both state and interstate transportation. The defendant concedes that if the Salina Northern were an interstate road in the sense of having tracks in more than one state the plaintiff, who was repairing a track used in both classes of commerce, would have been engaged in interstate commerce within the rule declared in *Pedersen v. Del., Lack. & West. R. R.*, 229 U. S. 146. That case sustained a recovery under the federal act by an employee who was injured while carrying bolts for use in the repair of a bridge used in both local and interstate commerce. There the road of which the bridge was a part did in fact extend into another state, but in our judgment the decision was not affected by that circumstance, but was based specifically and expressly upon the fact of the bridge being used in interstate as well as intrastate commerce, and therefore is controlling here. In the opinion the phrase "interstate road" is not used, nor is it mentioned that the road extended into another state further than that may be regarded as indicated by the statement that the bridge was in New Jersey. The following excerpt includes all the language directly bearing upon the grounds for holding the injured workman to have been engaged in interstate commerce:

"The defendant was operating a railroad for the transportation of passengers and freight in interstate and intrastate commerce, and the plaintiff was an iron worker employed by the defendant in the alteration and repair of some of its bridges and tracks at or near Hoboken, New Jersey. . . . These bridges were being regularly used in both interstate and intrastate commerce. . . . That the defendant was engaged in interstate commerce is conceded, and so we are only concerned with the nature of the work in which the plaintiff was employed at the time of his injury. Among the questions which naturally arise in this connection are these: Was that work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier? The answers are obvious. Tracks and bridges are as indispensable to interstate commerce by railroad as are engines and cars, and sound economic reasons unite with settled rules of law in demanding that all of these instrumentalities be kept in repair. The security, expedition and efficiency of the commerce depends in large measure

upon this being done. Indeed, the statute now before us proceeds upon the theory that the carrier is charged with the duty of exercising appropriate care to prevent or correct 'any defect or insufficiency . . . in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment' used in interstate commerce. But independently of the statute, we are of opinion that the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related to such commerce as to be in practice and in legal contemplation a part of it. The contention to the contrary proceeds upon the assumption that interstate commerce by railroad can be separated into its several elements and the nature of each determined regardless of its relation to others or to the business as a whole. But this is an erroneous assumption. The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged? . . . True, a track or bridge may be used in both interstate and intrastate commerce, but when it is so used it is none the less an instrumentality of the former; nor does its double use prevent the employment of those who are engaged in its repair or in keeping it in suitable condition for use from being an employment in interstate commerce." (*Pedersen v. Del., Lack. & West. R. R.,* 229 U. S. 146, 150, 151, 152.)

In a later case it was said: "In *Pedersen v. Delaware, Lackawanna & Western R. R. Co.,* it was held that one carrying bolts to be used in repairing an interstate railroad and who was injured by an interstate train was entitled to invoke the Employers' Liability Act. In other words, that one employed upon an instrumentality of interstate commerce was employed in interstate commerce." (*Erie R. R. Co. v. Collins,* 253 U. S. 77, 83.) "Interstate railroad" may readily be regarded as a convenient phrase used to designate a road doing interstate business. A bridge over which interstate traffic passes seems to be quite as much "an instrument of interstate commerce" where the road of which it is a part lies wholly in one state as where it extends into another. At any rate the mere use of that expression in connection with the Pedersen case cannot overcome the effect of the language already quoted from the opinion therein. Incidentally it may be remarked that the reference to an "interstate train" is obviously the result of a clerical or typographical error, for it was an intrastate train that ran into and injured Pedersen.

It is said that work done in the maintenance of the main line of an interstate road is interstate commerce (see note, 24 A. L. R. 635); and this is necessarily true even if by "interstate road" is meant a road whose tracks extend beyond the boundaries of a single state, for such a line would necessarily be used in interstate commerce. In one of the notes referred to in that just cited a summary of the

Coil v. Payne, *Director General.*

track-repairing cases is made in these words: "One engaged in maintaining or repairing track already laid, over which interstate traffic passes, is engaged in interstate commerce." (Note, 14 A. L. R. 732.)

The defendant cites *State of Texas v. Eastern Texas R. Co.*, 258 U. S. 204, as supporting the view that a workman repairing the track of a railroad situated wholly in one state is not engaged in interstate commerce. It was there held that the act of congress authorizing the interstate commerce commission to permit railroads to abandon the operation of their lines does not give the commission power to authorize a railroad lying in a single state to discontinue local business. We think the analogy to the present situation not close enough to affect the conclusion already announced.

2. A further contention of the appellant is that the special findings of the jury do not disclose actionable negligence. The plaintiff was injured by a push car on which he was riding jumping the track. The jury found that the car was going at the rate of at least ten miles an hour and that the defendant's negligence consisted "in running the push car ahead of the motor" instead of having the motor pull it. The defendant urges that as a matter of law it could not reasonably have been anticipated that running the push car ahead of the motor at ten miles an hour would cause it to jump the track. There was evidence that a person named, described as general manager, had given an instruction to a section hand of the Salina Northern never to put a push car ahead of a motor car. A Union Pacific section foreman gave this testimony: "Push cars should be run behind the motor to avoid accidents. We always figure there is more danger in pushing anything than there is in pulling it. I cannot tell why that is so." There was also evidence that the push car weighed about 400 pounds; that the ordinary rate at which cars were run in doing such work was five or six miles an hour; that about the point where the plaintiff was injured the ties were out of line and low, a witness for the defendant saying that there might be a low joint here and there. While the jury's finding already referred to eliminated the roughness of the track as a separate ground of negligence its condition was a matter to be considered in determining the probability of the push car staying on the track.

We think the evidence was sufficient to warrant the jury in concluding that it was contrary to rule and to practice to run the push car ahead of the motor; that it was safer to pull it because of a

greater likelihood of its keeping the track; and that under the circumstances shown it might reasonably have been anticipated that pushing the car would cause it to leave the rails.

The judgment is affirmed.