No. 25,384.

OREL D. HOOK, *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. FEDERAL EMPLOYERS' LIABILITY ACT—*Negligence*—*Injury to Employee*— *Falling from Section Motor Car*—*No Material Variance from Pleading*. In an action against a railway company for injury to a track laborer through his being thrown from a section motor car by a lining bar falling from it, one end hitting the end of a tie, causing the other to fly up and strike him in the back, it is held that such an occurrence cannot be said to be physically impossible, and that the evidence on the subject did not show a material variance from the pleading.

2. SAME—*Evidence Supports Finding of Negligence*. The evidence in the case referred to in the foregoing paragraph is held to support a finding of negligence on the part of the defendant in failing to see that the tools were properly loaded on the car so as to avoid unnecessary risk of their falling off.

3. SAME—*Plaintiff Engaged in Interstate Commerce.* . The pleadings and instructions are held to show the interstate character of a railroad in whose employ the plaintiff was injured while repairing the roadbed, thus bringing the case within the operation of the federal employers' liability act.

4. SAME—*Assumption of Risk*. The evidence is held not to establish the defense of assumed risk as a matter of law.

5. SAME—*Judgment Not Excessive*. The judgment is held not to be so large as to require interference by the court.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed July 5, 1924. Affirmed.

*William R. Smith, Owen J. Wood,* and *Alfred A. Scott,* all of Topeka, for the appellant.

*W. H. Lewis, C. M. Williams,* and *D. C. Martindell,* all of Hutchinson, for the appellee.

The opinion of the court was delivered by

MASON, J.: Orel D. Hook sued the Atchison, Topeka & Santa Fe Railway Company because of injuries received while in its employ as a section hand engaged in the repair of its roadbed. He recovered a judgment, and the defendant appeals.

In the course of track repair work the plaintiff and seven other section hands, including the foreman, were riding east on a section motor car, described by him as a hand car driven by gasoline power.

A seat 26 inches wide and 5 feet 10 inches long extended in the middle of the car from the front to the rear. On the floor of the car on either side of the seat were open boxes extending its full length, in which a large number of tools were carried. Four of the men occupied the seat on the north side, facing in that direction. The plaintiff was at the east or front end of the south seat, two of the men occupying it with him, the other one sitting on a water keg on that side of the car. The plaintiff testified he was sitting diagonally on the car, one foot hanging in front and the other at the side, his left shoulder being towards the men on the north side of the seat. According to his contention, which is supportable by inferences to be drawn from the evidence, although there was no eyewitnesses to some of the details, his injury was occasioned in this manner: A lining bar about five feet long, which was in the box at his feet, fell from the car, its point hitting the end of a tie, causing the handle to fly up and hit him in the back, knocking him from the car, which ran over him. The jury found that the defendant was guilty of negligence in improperly loading the car, or overloading it, and that the foreman was negligent in not inspecting the car carefully after being loaded.

1. The defendant asserts that there was a variance between the pleading and proof as to the manner in which the accident occurred, and that it was impossible for the plaintiff to have been thrown from the car in either way. The allegations of the petition were in accordance with the plaintiff's contention as already stated. The defendant appears to interpret his testimony as meaning that the bar struck him in the back before it fell off the car. His language on direct examination was:

"I do not know how it came to hit me. The first thing I realized I was in front of the car. The bar hit me between the shoulder blades. I couldn't tell what part of the bar struck me. I felt the contact of the bar with my body. It wasn't the sharp end of the bar that hit me; it didn't go into my back. The car ran onto me and injured me."

On cross-examination he said:

"My first recollection of the accident was that I knew something hit me in the back between the shoulder blades or at the edge of one blade. . . . I glanced over the right shoulder and something hit me here in the back. It hit me between the shoulders. I knew it was a lining bar because the lining bar fell forward and hit the rail between me and the rail, after it hit me. . . . I didn't see what caused it to fly up and hit me; it just overbalanced on the end of the car. In hitting me it came from the west; that is, from back

here, and tilted over. I know in my own mind what caused it. I didn't see this bar come up there. The first thing I knew about it was when it hit me. After it hit me it fell down between the rails."

While the plaintiff did not undertake to say from personal knowledge just what made the end of the bar fly up and hit him, his testimony is consistent with the theory already indicated, which is supported to some extent by the position in which the bar was found, and by a mark presumably made by its point in the end of a tie or in the cinders between the tie ends. His testimony was not that the bar hit him before it fell out of the box or off the car, but that after it hit him it fell forward and hit the rail, or fell between the rails. We cannot say that it was physically impossible for the falling bar to strike its point against a tie in such a manner as to cause the handle end to rotate swiftly about the point and strike the plaintiff with sufficient force to throw him from the car.

2. The defendant urges that the accident cannot have been caused by the overloading or improper loading of the car, or by the failure of the foreman to inspect it after it was loaded. We are unable to say that putting too many tools in the shallow boxes or failing to arrange them in stable position may not have been the cause of the bar falling out and thereby the injury being done; nor can we say that it was not the duty of the foreman to see that the tools were properly packed so as not to jolt out of the boxes, although there was no specific evidence of a custom or duty of making such inspection. No such evidence was necessary to show that it was incumbent on the foreman, as the representative of the defendant in charge of the workmen, to take all reasonable precautions for their safety.

3. The defendant asserts that the plaintiff is precluded from recovering by the rule of assumed risk. The plaintiff says this question is not in the case because there is nothing to show that at the time of his injury he was engaged in interstate commerce, so that the state statute and not the act of congress applies and assumed risk is not a defense. The petition does not refer to the federal employers' liability act nor use the term interstate commerce. It does state, however, that the defendant operates a railway through the state of Kansas—a fact of which judicial notice would be taken in any event (*Patterson v. Railway Co.*, 77 Kan. 236, 94 Pac. 139)— and that he was engaged in repairing the roadbed when hurt. This is sufficient to bring the case within the federal law. (*Coil v. Payne,*

*Director General*, 114 Kan. 636, 220 Pac. 172.)   Moreover, instructions were given on the theory that assumed risk, if established, would constitute a defense.

4. The defendant argues that any danger from overloading or improper loading of the car was open to common observation and was as readily to be seen and appreciated by him as by the company, and therefore that the defense of assumed risk was established. In answer to special questions the jury found that the plaintiff had been employed on this section and with this hand car for about two years; that he assisted in loading the tools on the hand car; that the position of the tools on the car was "approximately" obvious to anyone who would make a casual examination; and that there was no positive evidence whether the plaintiff was familiar with the manner in which the tools were loaded on the car prior to the injury. The finding last stated is complained of as evasive, but no request was made for a more direct answer to the question. Inasmuch as the other answers showed the facts from which an inference concerning the plaintiff's familiarity with the manner in which the tools were loaded might have been drawn, we do not think the jury's statement that there was no positive evidence on the subject affords material ground of complaint. In order for the defense of assumed risk to be established it was not enough that the plaintiff knew of the physical facts as they existed; he must have known and appreciated the danger. (*Brizendine v. Railroad Co.*, 96 Kan. 691, 153 Pac. 495; *Seaboard Air Line v. Horton*, 233 U. S. 492.) We do not think that it can be said as a matter of law that the plaintiff appreciated or was under an obligation to appreciate the danger, or that the danger was not one that the defendant was bound to take into account and provide against. "It cannot be said as a matter of law either that the danger . . . was so obvious that the plaintiff must have known of it, or that it was so remote that the defendant could not be charged with knowledge of it. Both questions were for the jury." (*Tecza v. Sulzberger & Sons Co.*, 92 Kan. 97, 101, 140 Pac. 105.)

5. The final complaint is that the verdict was excessive. The plaintiff was allowed $1,000 for pain and suffering and $7,000 for "permanent injury." According to the evidence he suffered a compound fracture of the right arm above the elbow, the treatment of which left permanent scars. A doctor said: "The probabilities are that he will not have the full and complete use of it as he had be-

fore it was injured." The plaintiff also received an injury to his left wrist, resulting in "some limitation of motion," which would be "more or less permanent." He testified that at the hospital they said the wrist was broken and dislocated. He wore a cast over it for five or six weeks. His right leg was bruised and cut. He was five months in the hospital. The trial was about a year after the accident, and the plaintiff testified his wrist still hurt him; that he could use it, but it was stiff; that he could not use his right arm as he did before, because it wasn't strong enough; there was no muscle in it. We do not think the judgment large enough to require interference by this court.

The judgment is affirmed.