No. 45,349

Cecil J. Powell, *Appellant,* v. The City of Haysville, Kansas, *Appellee.*

(455 P. 2d 528)

Opinion filed June 14, 1969.

Patrick L. Dougherty, of Wichita, argued the cause, and *Payne Ratner, Louise Mattox, Payne H. Ratner, Jr., Cliff W. Ratner, R. R. Barnes* and *Edmond L. Kinch,* all of Wichita, were with him on briefs for the appellant.

*Byron Brainerd,* of Wichita, argued the cause, and *Walter A. Sawhill, Warren R. Southard, Lawrence Weigand, Lawrence E. Curfman, Charles W. Harris, Orval J. Kaufman, Donald A. Bell, J. L. Weigand, Jr., Spencer L. Depew, Paul M. Buchanan, John R. Stallings, Brian G. Grace,* and *Windell G. Snow,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Kaul, J.: Plaintiff-appellant instituted this action for damages for personal injuries against his employer, The City of Haysville, defendant-appellee. Plaintiff has appealed from a summary judgment entered in favor of defendant.

Plaintiff attacks the summary judgment on two grounds: First, that it was entered in violation of procedural requirements of K. S. A. 60-256 ( *c* ) and, second, it was based on an erroneous finding that plaintiff did not comply with the requirements of K. S. A. 12-105 before bringing the action. Plaintiff further claims the trial court erred in sustaining an objection to interrogatories which plaintiff had propounded to defendant.

Plaintiff was employed by defendant in 1960. His work was in defendant's water conditioning and purification plant where he worked around and with the chemicals alum, lime and chlorine. Plaintiff's employment continued until March 31, 1966. On April

13, 1966, plaintiff entered St. Joseph Hospital and was dismissed on April 20, 1966.

On June 14, 1966, plaintiff's counsel addressed a letter to the city clerk of the City of Haysville. The letter stated that plaintiff was totally disabled, as a result of inhaling chemical dust over a long period of time, and that notice was being made pursuant to K. S. A. 12-105.

On oral argument it was conceded that the date of plaintiff's letter to the city clerk was June 14, rather than July 14, 1966, as found by the trial court. The finding of the trial court in this regard appears to have been based on plaintiff's oral motion to amend in which he mistakenly fixed the date of his communication as July 14.

Plaintiff first filed the action against McKesson and Robbins Chemical Company, who supplied defendant with chlorine gas. Plaintiff later filed an amended petition naming the City of Haysvills as a defendant. He alleged the city failed to furnish him a safe place to work in that he was assigned to work around alum, lime and chlorine gas, and as a result developed pulmonary emphysema. He further alleged he became aware in April 1966 that he was suffering a lung ailment, permanent in nature.

Defendant answered alleging plaintiff had failed to state a cause of action, had assumed the risk of his employment, was guilty of contributory negligence, and that the action was barred for failure to comply with K. S. A. 12-105 and/or K. S. A. 14-441 (Repealed by Laws of 1968, Ch. 375, Sec. 19.)

The action was subsequently dismissed as to McKesson and Robbins Chemical Company.

On July 24, 1967, defendant filed a motion for summary judgment which was initially overruled. At a pretrial conference, on November 29, 1967, defendant's motion for summary judgment was orally renewed and sustained. After noting appearances and granting plaintiff leave to amend his petition by alleging service of notice, pursuant to 12-105, *supra*, the pretrial order and judgment in pertinent part read:

"Thereupon defendant City of Haysville, Kansas, orally moved the court for an order of summary judgment as concerns the City of Haysville, Kansas. The court having considered the pleadings, admissions of counsel, depositions, exhibits and various interrogatories with answers thereto filed herein as well as the contentions and authorities submitted by the parties and being fully advised in the premises finds that:

"1. Plaintiff had knowledge as to the alleged nature and cause of his physical condition for which he seeks recovery of damages of and from the defendant City of Haysville, Kansas, in July or August of 1965.

"2. Plaintiff's communication to the City of Haysville, Kansas, under date of July 14, 1966, does not comply with the requirements of K. S. A. 12-105 and plaintiff may not maintain a cause of action against the City of Haysville, Kansas.

"3. Thereupon the court concludes as a matter of law that the motion for summary judgment by the defendant City of Haysville, Kansas, should be sustained."

Plaintiff next filed a motion asking the trial court to set aside the summary judgment. With this motion plaintiff filed an affidavit stating that although he learned he had pulmonary emphysema in August, 1965, he was not informed until April of 1966, that his condition was connected with lime, alum and chlorine.

On December 13, 1967, the trial court overruled plaintiff's motion to set aside the summary judgment and this appeal followed.

Although plaintiff did not object at the pretrial conference to defendant's motion for summary judgment on the grounds of insufficient notice or that it was oral, he now claims the motion should not have been entertained. We further observe that these grounds were not raised in plaintiff's subsequent motion to set aside the summary judgment.

The identical question was before this court in two recent cases, in each, of which, the issue was determined adversely to plaintiff's contention. (*Collins v. Meeker*, 198 Kan. 390, 424 P. 2d 488, and *Green v. Kaesler-Allen Lumber Co.*, 197 Kan. 788, 420 P. 2. 1019.)

In considering the point in the *Collins* case it was stated:

"At this point we take note of the plaintiff's insistence that the trial court erred in rendering summary judgment at a pretrial conference without previous notice and without a motion for summary judgment having been filed. This identical issue was raised in the recent case of *Green v. Kaesler-Allen Lumber Co.*, 197 Kan. 788, 420 P. 2d 1019, where it was determined adversely to the plaintiff's contention. No good purpose would be served by repeating all that was said in the *Green* opinion. We believe it sufficient here, to reiterate that a trial court has inherent power to dispose summarily of litigation where no genuine issue exists as to any material fact and where, giving effect to every reasonable inference which can be drawn from the evidence, judgment must be for one party or the other, as a matter of law. Such authority may be exercised by a trial court even though no motion has been filed or prior notice given, provided neither party is placed at a disadvantage because thereof." (p. 393.)

We turn next to the controlling question whether there remained

a genuine issue of fact at the time summary judgment was entered. The determination of this issue depends upon the application of 12-105, *supra*, to the pleadings, depositions and interrogatories in this case, construed in the light most favorable to plaintiff, as the party opposing the motion. (*Herl v. State Bank of Parsons*, 195 Kan. 35, 403 P. 2d 110.)

K. S. A. 12-105, insofar as pertinent to our consideration, provides:

"No action shall be maintained by any person or corporation against any city on account of injury to person or property unless the person or corporation injured shall within three (3) months thereafter and prior to the bringing of the suit file with the city clerk a written statement, giving the time and place of the happening of the accident or injury received and the circumstances relating thereto: . . ."

The crux of plaintiff's argument is that the time contemplated in the statute did not commence to run until after the full nature and cause of his injury became known to him, which he fixes in his notice as April 13, 1966, when his condition was diagnosed as permanent lung damage from pulmonary emphysema producing total permanent disability. Plaintiff further asserts the summary judgment, based on the premise that he had knowledge of the nature and cause of his physical condition in July or August 1965, necessitated a finding of fact which was in good faith disputed. In other words, the only issue framed on appeal is whether there is a good faith question of fact as to plaintiff's knowledge of his injury and the cause thereof when he was hospitalized in 1965.

In his deposition plaintiff described his work and the events leading up to his hospitalization in 1965. When he commenced his employment in 1960; plaintiff knew he would be required to work with alum, lime and chlorine. The method of operation of defendant's water plant remained the same during the term of plaintiff's employment. Two or three times each day plaintiff was required to empty eight to ten fifty pound sacks of lime into a hopper, which fed the lime into the water purification plant. Plaintiff stated that he would use from thirteen to twenty-five fifty pound sacks of lime per day. He would cut the sacks and dump the lime into the hopper; dust would roll up out of the hopper and choke plaintiff to the point where sometimes he would have to run outside for fresh air. He stated that sometimes when he dumped two or three sacks he would have to get out; that he was "choked up, smothered down." He also stated that he got worse and worse the more he emptied lime and alum into the hopper.

Every other day plaintiff dumped a hundred pound sack of alum into the hopper and he stated that his reaction to the alum was just the same as with the lime dust.

Every ten days to two weeks plaintiff was required to change bottles of chlorine gas. About two years after plaintiff started working in the water plant a union, which connected the chlorine bottle with the plant, broke, gas escaped which plaintiff smelled, he shut the bottle off and got out as quickly as possible. Plaintiff stated that after smelling the gas he could not breathe; it took him three to four hours in the fresh air to recover and it made him sick, causing him to vomit. He described the effect of the chlorine gas as being just like the lime dust, "He just couldn't breathe."

In August of 1965 (hospital records show it to be July) plaintiff became aware of a lung problem and was hospitalized. In his deposition plaintiff described the events as follows:

"Q. Well, In August of '65, what were the symptoms that made you think you had a lung problem for the first time?

"A. I came down out of the lime room after putting the lime into the hopper, which we do two or three times a day, and I got downstairs and I was so choked I couldn't breathe.

"Q. Your lungs were filled with lime dust, were they?

"A. Lime dust, and I couldn't breathe, and I called my foreman and he sent me a man—my wife came and got me and took me to the emergency room of the St. Joe Hospital.

"Q. How long were you in St. Joe Hospital?

"A. As near as I can recall, eight days.

"Q. Who treated you there?

"A. Dr. Purinton.

"Q. And after the eight day time in the hospital, did you go back to work?

"A. Yes, I went back to work.

"Q. But, as I understand you—did he diagnose your condition as emphysema at that time or did he know what it was at this point?

"A. Yes, yes."

After his 1965 hospitalization, plaintiff returned to work and continued until March 31, 1966, when he became totally disabled, according to "The doctor's advice." Plaintiff stated his physical condition which caused his disability was pulmonary emphysema and that his lung condition occurred as near as he could tell in August of 1965, when he experienced lung problems for the first time.

Plaintiff also admited that he knew he had an asthmatic condition in 1958, before he commenced his employment with defendant.

From his own testimony it is quite apparent plaintiff knew, at least by July 1965, he had a lung condition and that it continued

to get worse "the more he dumped lime and alum into the hopper," and culminated in his choking attack, which required seven days hospitalization in 1965.

A diagnosis of plaintiff's condition in 1965, the causes thereof and the medical advice given, are set out in the deposition of plaintiff's physician, Dr. Lew L. Purinton, as follows:

"Q. Now, Doctor, let's turn to the pulmonary emphysema. Did you form any opinion as to the cause of that physical condition?

"A. Well, I think the same answer would apply, . . ."

"Q. Well, to sum up your conclusion from Mr. Powell's initial confinement in the hospital, you concluded, and correct me if I misunderstood you, that his exposure to lime dust, his exposure to chlorine gas and his smoking was probably the aggravating condition or the cause of his physical condition at that time?

"A. This is true, I would like to alter it just a little bit. I didn't feel and and don't feel at the present time that the inhalation of the dust and the gas was the whole picture. I am sure there were many other factors involved, including smoking and including factors that we don't understand today and didn't understand then, but I did feel that the inhalation of the dust particles and the chlorine gas had an aggravating factor to it.

"Q. Doctor, did you have any source of information as to extent of his exposure to lime dust?

"A. Only indirectly, and this came from him and, again, no notes, but I remember he specifically telling me that when he had to empty those bags that the air was white with dust, so to speak, so it must have been a fairly heavy exposure at this time. I really can't tell you how often he did this, but I got the impression that this was a frequent thing that he did throughout his daily work. . . .

"Q. Doctor, if the source of information relative to his exposure came from Mr. Powell you must have discussed these conditions with him, is that a fair assumption?

"A. Yes, we discussed it a number of times.

"Q. Well, do you recall whether or not during his first hospitalization you gave him any instructions or any warnings relative to subsequent exposures?

"A. We discussed about the frequency of the exposure and that his continued exposure would probably keep his asthmatic condition going.

"Q. All right.

"A. And I advised him to limit the exposures as much as he possibly could. As my recall is, he told me (he) had no other job he could do out there and there wasn't anybody else that could do this so he was going to have to do it, so we left it at that.

"Q. As I understand it, during his initial confinement in the hospital in 1965, you warned him that repeated exposures to these—to lime dust and chlorine gas would have a harmful effect on his physical well being?

"A. This is my recollection.

"Q. All right, Doctor, would you just kindly tell us as best you can recall what the conversation was relative to future exposures to these conditions?

"A. You are referring to the first hospitalization?

"Q. Referring to the first hospitalization.

"A. We discussed the overall problem with him and this included his exposure to the dust particles in his work as well as to his smoking, and he was advised to limit as much as possible the exposure to the dust that he came in contact with in his job, he was also advised to stop his smoking.

"Q. And the purpose of that advice was to free him from further physical problems, was it not Doctor?

"A. The purpose of that was to limit and to hopefully stop his asthmatic problem."

After he was released from the hospital on August 2, 1965, plaintiff was not seen by Dr. Purinton until he was again hospitalized on April 12, 1966. With reference to any change in plaintiff's lung condition during the interim, Dr. Purinton testified:

"Q. Well, Doctor, based on your training, your medical training, your medical experience and your examinations of Mr. Powell, can you tell the court and jury that Mr. Powell's employment and the conditions of his employment had any effect upon his health between July 26, 1965 and April 12, 1966?

"A. From my examination, I didn't think there had been any particular change. He claimed to have further and progressive difficulty, his subjective complaints were that his asthma had gotten worse, but on his examination I wasn't able to discover any appreciable change in his condition."

When asked again concerning any change in plaintiff's condition, the doctor testified:

"A. I think I answered that earlier that I hadn't detected any appreciable change, although he complained that his symptoms were worse, but his examination failed to reveal any outright evidence of any progression."

Plaintiff asserts that his affidavit filed in support of his motion to set aside the summary judgment creates a fact question in that he denied he was told of a connection between his lung condition and his work with lime, alum and chlorine. The effect of his affidavit is an attempt to impeach the testimony of his own doctor. Further, plaintiff's own testimony conclusively shows that he knew his exposure to dust, under the conditions he related, adversely affected his condition and caused the severe attack in 1965.

Except under conditions not prevailing here, plaintiff may not by his subsequent affidavit impeach his previous testimony upon deposition or the testimony of his attending physician and sole medical expert. (*Amerine v. Amerine, Executor,* 177 Kan. 481, 280 P. 2d 601, and *Steele v. Woodmen of the World,* 115 Kan. 159, 222 Pac. 76.)

Since the enactment in 1903 of the precursor of K. S. A. 12-105, this court has repeatedly held the timely filing of a statement re-

quired by the statute to be a condition precedent to maintaining a suit against a municipality.

The mandatory compliance with the requirements of K. S. A. 12-105, as a condition precedent to the maintenance of an action against the city to recover personal injury or property damage, is discussed in depth, and decisions dealing with the subject are reviewed, in the recent case of *Workman v. City of Emporia,* 200 Kan. 112, 434 P. 2d 846, and need not be restated. It suffices to say that on the record before us here the trial court correctly ruled that plaintiff had failed to meet the requirements of the statute.

Plaintiff cites and relies heavily on the cases of *Morris v. Dines Mining Co.,* 174 Kan. 216, 256 P. 2d 129; *Kitchener v. Williams,* 171 Kan. 540, 236 P. 2d 64, and *Urie v. Thompson,* 337 U. S. 163, 93 L. Ed. 1282, 69 S. Ct. 1018, 11 A. L. R. 2d 252. These cases deal with the application of statute of limitations; *Morris* and *Kitchener* with respect to a common-law tort action and *Urie* with respect to an action brought under the Federal Employers' Liability Act. The thrust of the decision in each case is that the statute of limitations does not commence to run so as to bar an action until the complaining party has suffered substantial damage as in *Kitchener* or the injury became ascertainable as in *Urie* and *Morris,* as distinguished in point of time from when a defendant's first negligent act occurred.

Both Morris and Urie suffered silicosis allegedly resulting from exposure to dust.

In fixing time with respect to the statute of limitations under the Federal Employers' Liability Act, the United States Supreme Court in *Urie* adopted the rule as follows:

" '. . . It follows that no specific date of contact with the substance can be charged with being the date of injury, inasmuch as the injurious consequences of the exposure are the product of a period of time rather than a point of time; consequently the afflicted employee can be held to be "injured" only when the accumulated effects of the deleterious substance manifest themselves. . . .' " (p. 170.)

The nature of plaintiff's ailment was manifest and its connection with his employment was fully known to him in 1965, when he could have instituted an action.

Plaintiff complains the trial court erred in sustaining an objection of defendant to interrogatories propounded during the course of pretrial discovery proceedings. Apparently, the objection was sustained on the grounds that the interrogatories were too indefinite and framed to elicit answers which would not be admissible in evi-

dence under K. S. A. 60-451. The issue raised by plaintiff is not precisely framed by the record before us. Apparently, the interrogatories in question concerned whether the city had made alterations or repairs to the water plant subsequent to April 1, 1966. It appears from the record that some interrogatories, dealing with the same subject, were subsequently submitted to, and answered by, defendant. In any event, plaintiff fails to show how he was prejudiced, as the issue of negligence on the part of defendant was not resolved or considered by the trial court in rendering the summary judgment appealed from.

The judgment is affirmed.