No. 45,458

Harry G. Miller, *Appellant*, v. Beech Aircraft Corporation, a corporation, *Appellee*.

(460 P. 2d 535)

Opinion filed November 8, 1969.

*Eugene L. Pirtle,* of Wichita, argued the cause and was on the brief for the appellant.

*Byron Brainerd,* of Wichita, argued the cause, and *Brian G. Grace,* also of Wichita, was with him on the brief for the appellee.

The opinion of the court was delivered by

Fontron, J.: For some fourteen years Harry G. Miller, the plaintiff and appellant herein, worked for the defendant, Beech Aircraft Corporation. On March 16, 1964, on advice of his doctor, Mr. Miller gave up his employment for reasons of health. Approximately twenty-three months thereafter he filed this action for per-

sonal damages allegedly resulting from his employer's negligence in not furnishing him a safe place in which to work.

Trial was commenced to a jury, but at the conclusion of the plaintiff's evidence the trial court sustained the defendant's motion for a directed verdict on three grounds: 1. Plaintiff's evidence failed to show a causal connection between his employment and his physical condition. 2. Plaintiff's cause of action accrued more than two years before suit was filed and recovery is barred under K. S. A. 60-513 (4). 3. Plaintiff assumed the risk of the conditions of his employment. After a motion for new trial was overruled, the plaintiff filed this appeal.

We shall consider separately each ground on which the trial court ruled in directing judgment for the defendant. Before doing so however, a brief résumé of portions of plaintiff's evidence is in order. When Mr. Miller first went to work for Beech he was in the shipping department. After a few months he was transferred to the electrical department where he became adept at soldering. In about 1958 he began working on the form board. This work consisted first of soldering wires into electric plugs and then soldering the other ends into the form board. In the process, it was necessary to strip fiber-glass insulation from the ends of the wires. The job required Miller to face his work very closely to make sure it was done correctly.

The area in which plaintiff worked was on a balcony directly beneath the roof. The work area was dusty and dust accumulated on the exposed rafters overhead. Ventilation was poor although fans were installed on the rafters in 1958 at Mr. Miller's request. Two requests by Mr. Miller for face masks were ignored as was a further request for additional ventilation.

In both 1958 and 1959 the plaintiff, who had become concerned about his lungs, consulted Dr. Bernstorf of Winfield who took some chest X-rays. The record does not disclose the doctor's diagnosis or what, if anything, he advised his patient. The plaintiff, however, continued his employment with Beech, and later consulted with two other doctors in about 1963. We know nothing of their diagnoses or advice. A short time before leaving his job, Mr. Miller consulted Dr. Hird and as a result of this conference concluded he must either quit his work or die. Choosing the first alternative, the plaintiff parted company with Beech on or about March 16, 1964. The plaintiff's evidence will be explored more fully as it becomes material to the issues presented.

Initially, we must determine whether plaintiff's evidence was sufficient to establish a causal connection between the conditions under which he labored and the condition of his health. First of all, what was the state of his health? In July, 1967, Mr. Miller first visited Dr. Clifford Sumner Reusch, an associate of the Snyder Clinic in Winfield, Kansas, who, after consulting X-rays and tests taken at that time, as well as two sputum tests taken at the clinic early in 1965, diagnosed Miller's condition as (1) emphysema and (2) pulmonary fibrosis, or scarring of the lungs, leaving him totally unable to perform work requiring physical effort. The sputum tests disclosed evidence of fiberglass strands, while the 1967 X-ray showed "heavy markings or inflammatory residuals" which had appeared or become more marked since the X-rays taken by Dr. Bernstorf in 1958.

On direct examination Dr. Reusch testified that:

". . . I think I can state that by virtue of the progressive changes in the chest x-ray and in the respirometric studies obtained on this patient during the tenure of his employment as—or in an aircraft factory and during that period of time during which the patient indicated the onset of his symptoms and the progression of his disease, that one can establish a relationship between the periods of employment as an aircraft worker and the time of occurrence and progression of the disease."

On cross-examination, in response to a question propounded by defense counsel, Dr. Reusch stated:

"I have not said that his physical condition is work connected."

Again on redirect examination, the doctor was asked the following question and gave the following response:

"Q. 'All right. Now, you stated that you can not or will not state that this disability is work connected—did I correctly quote you on that—on cross-examination?'

"A. 'That is correct.' "

The doctor's last two answers are highlighted in the defendant's brief and are the pegs upon which Beech now hangs its argument that no causal connection was shown. However, Beech conveniently overlooks Dr. Reusch's opinion as to causation given on his redirect examination:

"My opinion, based upon what I'm told by the patient and based upon the possibilities of its occurrence is that there is a relationship between the inhalation of noxious gases and particulate matter in his work environment, and the development of his pulmonary fibrosis."

Other portions of the doctor's testimony, which need not at this time be quoted, lend corroborative support to the opinion he had expressed.

In conjunction with the medical opinion voiced by Dr. Reusch, certain lay testimony is also entitled to be considered in determining whether there was sufficient evidence of causal relationship between Miller's employment and his pulmonary fibrosis to go to the jury. In *Hanna v. Edward Gray Corporation*, 197 Kan. 793, 421 P. 2d 205, an action for workmen's compensation, there was inconclusive medical evidence to establish causal relationship between the fatal heart attack suffered by the workman and the job he was doing. In this situation we said:

"In the past the Supreme Court of Kansas when specifically confronted with the issue here presented in workmen's compensation cases has not required the trial court, or fact-finding body, to confine its consideration of a workman's injury to the testimony of exper[t] medical witnesses. (p. 800.)

. . . . . . . . . . . . . .

". . . [A] determination of the factual issues—whether the injury arose out of the employment—need not be confined to a consideration of the testimony of the medical expert witness, which standing alone was inconclusive, but may include consideration of other testimony in the case as well." (p. 802.)

See, also, *Gilliland v. Cement Co.*, 104 Kan. 771, 180 Pac. 793.

Although both *Gray* and *Gilliland* involved claims for workmen's compensation, we believe their underlying rationale is just as valid in the present case.

The record contains lay testimony of the conditions under which the plaintiff worked; of lack of proper ventilation; of long time use of fiberglass which permeated the atmosphere and worked into plaintiff's clothes and hair, nearly driving him crazy with itching and requiring daily changes of clothes and daily shampoos; of dust and other particles so thick that coffee, milk and other drinks had to be consumed as soon as poured, else they would be contaminated by "specks and spots and dust and stuff." Lay testimony also pointed to a continuing deterioration in Miller's health which commenced shortly after his exposure to such conditions.

It is our opinion that from the evidence, both lay and expert, the jury might reasonably have drawn the inference that plaintiff's disability was job-connected. We believe the trial court erred in deciding as a matter of law that the plaintiff's evidence failed to establish a causal relationship between his employment and damage to his health.

Turning to the second point raised on appeal, the plaintiff contends his cause of action accrued in March, 1964, when he first became aware of the nature and extent of the damage to his health.

Under the provisions of K. S. A. 1968 Supp. 60-513 (4) the plaintiff's action to recover damages was required to be filed within two years after his cause of action accrued. As to accrual, the statute reads in pertinent part:

"The cause of action in this section shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall the period be extended more than ten (10) years beyond the time of the act giving rise to the cause of action."

Pulmonary fibrosis, according to Dr. Reusch, is a chronic illness caused by chronic inflammation or chronic infection induced by irritating foreign substances in the lungs, such as fiberglass. As we understand the disease it is progressive in nature, without external or visible sign, and may remain latent for many years. In our judgment, the accrual of a right of action for damages resulting from such insidious disease would be governed by the foregoing statutory provision.

The Kansas statute declares what seems to us the proper rule, although there is some diversity of opinion among authorities throughout the country. (See Anno., 11 A. L. R. 2d 277, Limitations—Contracting Disease; 1 A. L. R. 2d Later Case Service, 1109, *et seq.*) One of the leading cases in this area is *Urie v. Thompson*, 337 U. S. 163, 93 L. Ed. 1282, 69 S. Ct. 1018, 11 A. L. R. 2d 252, where the plaintiff, a locomotive fireman with thirty years of duty to his credit, became incapacitated from pulmonary disease diagnosed as silicosis and caused by continuous inhalation of silica dust during the course of his employment. The court rejected a claim by the defendant that Urie's suit was barred by the statute of limitations, observing that there was no suggestion that he should have known he had silicosis until he became too ill to work.

In its opinion the federal court, on page 170, quoted from *Associated Indemnity Corp. v. Industrial Accident Commission*, 124 Cal. App. 378, 381:

" 'It follows that no specific date of contact with the substance can be charged with being the date of injury, inasmuch as the injurious consequences of the exposure are the product of a period of time rather than a point of

time; consequently the afflicted employee can be held to be "injured" only when the accumulated effects of the deleterious substance manifest themselves. . . .' "

Our court has tacitly recognized the substance of the rule in the recent case of *Powell v. City of Haysville*, 203 Kan. 543, 455 P. 2d 528, where plaintiff, who worked at the city purification plant, came in contact with such chemicals as lime, alum and chlorine. In 1965, he was hospitalized with a lung ailment and was warned by his doctor that repeated exposure to the chemicals would be harmful to his health. Nothwithstanding his doctor's advice, plaintiff returned to work, becoming totally incapacitated the following year.

A dispute arose over whether plaintiff had filed his claim against the city within the time required by K. S. A. 12-105, the plaintiff contending that the time did not commence to run until the full nature and cause of the damage was known to him in the spring of 1966. The sole issue framed on appeal was whether there was a good faith question of fact as to the plaintiff's knowledge of his injury and cause thereof at the time he was hospitalized in 1965. This court, in upholding a summary judgment for the city, said:

"The nature of plaintiff's ailment was manifest and its connection with his employment was fully known to him in 1965, when he could have instituted an action." (p. 550.)

The *Powell* case clearly recognizes that a cause of action for damages resulting from disease contracted during the period of his employment comes into being when the disease and its cause becomes manifest, or is reasonably ascertainable.

This conclusion finds support in what has been said in a number of our past decisions. (See *Kitchener v. Williams*, 171 Kan. 540, 236 P. 2d 64; *Crabb v. Swindler, Administratrix*, 184 Kan. 501, 337 P. 2d 986; *Price, Administrator v. Holmes*, 198 Kan. 100, 422 P. 2d 976.)

Without getting into specifics, we incline to the belief it was for the jury to determine in this case when plaintiff's disabling disease and its cause became manifest or when, in the exercise of due care, the same was reasonably ascertainable. It is true that Mr. Miller for a number of years was concerned and had sought medical advice as to possible lung damage, but there is no evidence that he was warned of the risk of returning to his job. We are of the opinion that the evidence as to what if any medical advice plaintiff received, and whether he was or should have been aware of the actual state of his health and the connection between his employment and the

pulmonary fibrosis ravaging his lungs, was not sufficiently conclusive for the trial court to resolve, as a matter of law, the issue raised by the statute of limitations.

Somewhat similar considerations arise with respect to the doctrine of assumption of risk, the third premise on which the trial court directed a verdict.

Under the doctrine of assumption of risk a workman is deemed to have assumed the usual and ordinary risks incident to his employment. (56 C. J. S., Master And Servant, § 357, pp. 1148, 1149; *Lively v. Railway Co.*, 115 Kan. 784, 225 Pac. 103; *Blackmore v. Auer*, 187 Kan. 434, 357 P. 2d 765.) But the rule is not so heartless as to compel a workman's acceptance of extraordinary risks not usually appertaining to the employer's trade or business, or of risks which are concealed or which result from the master's negligence (56 C. J. S., Master And Servant, § 361, pp. 1160-1163) unless and until the workman knew, or in the exercise of reasonable care should have known, of the risks involved. (56 C. J. S. Master And Servant, § 382, pp. 1189-1191; *Railway Co. v. Bancord*, 66 Kan. 81; 71 Pac. 253; *Parker v. City of Wichita*, 150 Kan. 249, 92 P. 2d 86; *Hernandez v. Bachand*, 199 Kan. 82, 84, 427 P. 2d 473.)

The defendant calls attention to language in certain of our cases to the effect that assumption of the ordinary risks of employment is usually not a question of fact, but one of law. True, such language is to be found, but it occurs in connection with factual situations where the risks are ordinary, and appreciation of the danger must be imputed to the workman. To our knowledge, this court has never said that assumption of risk is invariably a question of law. Indeed, in more than one instance the court has declared that under the existing circumstances, the question was properly one for submission to the jury. (*Railway Co. v. Bancord*, supra; *Smith v. Railroad Co.*, 108 Kan. 151, 194 Pac. 318; *Harvey v. Palmer*, 179 Kan. 472 296 P. 2d 1053.)

In the present case we think the question of whether or not Mr. Miller assumed the risk of incurring the lung condition from which he suffered should have been submitted to the jury for its determination. We cannot say the risk of contracting pulmonary fibrosis is ordinarily incident to the aircraft industry. Neither do we view the evidence as compelling the legal conclusion than Miller was fully ap-

preciative of the nature and extent of the risks he was incurring by staying on his job. In 56 C. J. S., Master And Servant, § 389, p. 1197, the text recites:

". . . Likewise, it is not sufficient that the servant should merely know that there is 'some danger' attending the service, but it is further essential that there should be actual understanding and appreciation of its nature and extent, unless it is so obvious that the servant should know of and appreciate it."

*Tecza v. Sulzberger & Sons Co.,* 92 Kan. 97, 140 Pac. 105, bears considerable analogy to the case at bar. In *Tecza* the employee fell and was injured while attempting to move a large pickling vat onto a truck. The jury found the employer was negligent in failing to provide sufficient lighting. With respect to this aspect of the case, the plaintiff testified he had complained of the absence of light every day for several years and was promised that changes would be made. In upholding a judgment recovered by the plaintiff, this court stated:

"[W]e think the defense of assumed risk was not conclusively established. In order that a recovery shall be defeated upon that ground the plaintiff must not only have known of the existing conditions—he must also have realized and appreciated the danger that resulted from them. (26 Cyc. 1199.) This is not necessarily established by the fact that he made complaint; in doing so he may have had in mind merely the inconvenience that resulted from the want of additional lights. The matter of making the place safe to work in was not his problem. He was not required to take notice of any but the most obvious dangers. But much more than this was required of the employing company. . . ." (pp. 100, 101.)

In *Hook v. Railway Co.,* 116 Kan. 556, 227 Pac. 531, it was said:

". . . In order for the defense of assumed risk to be established it was not enough that the plaintiff knew of the physical facts as they existed; he must have known and appreciated the danger. . . ." (p. 559.)

See, also, *Suniga v. Railway Co.,* 94 Kan. 201, 146 Pac. 364; *Crouch v. Missouri Pac. Rld. Co.,* 124 Kan. 305, 259 Pac. 799.

We conclude the trial court erred in sustaining the defendant's motion for a directed verdict. The judgment is reversed and the case remanded to the trial court with directions to grant a new trial.