No. 46,259

BETTY T. SEYMOUR, *Appellant* and *Cross-Appellee,* v. VICTOR LOFGREEN, *Appellee* and *Cross-Appellant.*

(495 P. 2d 969)

Opinion filed April 8, 1972.

*Larry B. McGrath,* of Manhattan, argued the cause and was on the brief for the appellant and cross-appellee.

*Sheldon M. Crossette,* of Cooke, North, Crossette and Dickson, of Prairie Village, argued the cause, and *A. C. Cooke,* of the same firm, and *Robert Anderson,* of Anderson, Byrd, Richeson and Jones, of Ottawa, were with him on the brief for the appellee and cross-appellant.

The opinion of the court was delivered by

SCHROEDER, J.: This is a malpractice action in which the plaintiff seeks to recover damages for injuries alleged to have been sustained as a result of negligence on the part of a medical doctor.

The trial court sustained the defendant's motion to dismiss on the ground that the statute of limitations had run on the alleged cause of action.

The petition alleges that Betty T. Seymour (plaintiff-appellant and cross-appellee) sought treatment from Dr. Victor Lofgreen (defendant-appellee and cross-appellant) on or about September 1, 1964, because she was suffering from headaches, swelling of the stomach, extensive sinus drainage, mucous colitis, diarrhea, sweating, nausea and leg cramps. It alleged the defendant was a duly licensed physician holding himself out to the community of Ottawa, Kansas, as being skilled in the field of general medicine; that during 1964, 1965 and 1966 and through April 25, 1967, the defendant failed to discover any physical reason for her condition and failed to diagnose that she was mentally ill and suffering from schizophrenic disorder with paranoid trends and depression; and that during the years of treatment the plaintiff's physical problems became more severe and her mental condition became so distorted that on April 25, 1967, her family took her to Dr. E. H. Trowbridge, Jr., a psychiatrist, who immediately admitted her to Research Hospital in Kansas City and began extensive electro and insulin shock therapy. It alleged the plaintiff was admitted to the Osawatomie State Hospital on April 3, 1968, and was not discharged until March 7, 1969. This action was commenced on March 27, 1970.

The acts of negligence with which the defendant is charged in the petition are:

(1) The defendant employed improper diagnostic procedures and departed from recognized medical principles in failing to discover any physiological reason for her illness.

(2) The defendant failed to diagnose that she was mentally ill, when she was in fact suffering from a mental illness of schizophrenic disorder and paranoid trends of depression.

(3) The defendant failed to discover the ailment as being beyond his knowledge or technical skill or capacity to treat with a likelihood of success, and his failure to disclose this fact to the plaintiff.

(4) The defendant failed to advise her to seek other physicians' diagnosis or treatment.

All of the foregoing were alleged to be the proximate cause of the plaintiff's injuries.

The plaintiff alleged her injuries to be:

(1) That during all of this time plaintiff continued to suffer from the complaints for which she originally sought treatment.

(2) That her headaches became so severe that for weeks at a time she was not able to pursue her employment which was that of a bookkeeper.

(3) That she could not sew or cook the food for the family or clean house or do the many other household tasks.

(4) That her conjugal relationship with her husband ceased and she screamed and shouted at the children and her husband constantly, and her communication with her parents all but ceased.

(5) That she was unable to stand crowds or even groups of people.

(6) That in March and April, 1967, she seriously threatened suicide.

The petition alleged "that it was not until her discharge from the Osawatomie State Hospital that she was capable of ascertaining the fact of her injury as caused by the defendant." Among the allegations of negligence the plaintiff alleged the defendant was negligent in attempting to treat her mental condition "in failing to recognize the transference phenomenon and negligently manipulated the transference phenomenon; that plaintiff's emotions became so aroused that the plaintiff's feelings toward the defendant reached the point that plaintiff was in love with the defendant; that said defendant knowing of said condition and love for him, took advantage of said condition," causing the plaintiff to in fact love the defendant, who, during this period, sexually assaulted the plaintiff on many occasions.

The defendant moved to dismiss the action pursuant to K. S. A. 1970 Supp. 60-212 (b) on the grounds (1) that the service of process was insufficient; and (2) that the petition disclosed on its face it was barred by the statute of limitations.

The trial court found the service of process sufficient, but dismissed the action on the ground that the petition showed on its face it was barred by the statute of limitations. Whereupon, the plaintiff appealed from the court's order holding that the action was

barred by the statute of limitations, and the defendant cross-appealed from the order holding the service of process sufficient.

It may summarily be stated the resident service of process was sufficient, and that the defendant's cross-appeal has no merit. This point is inconsequential in view of our decision on the statute of limitations.

Simply stated, the petition alleges the appellant's injury is an aggravation of a pre-existing schizophrenic condition caused by the alleged acts of defendant's negligence with resultant damages.

The mishandling of the phenomenon of transference was the subject of a malpractice action against a psychiatrist by a patient in *Zipkin v. Freeman,* 436 S. W. 2d 753 (Mo. 1968). There the plaintiff recovered a judgment, and the court in its opinion discusses the improper handling of the transference phenomenon, which was characterized as a continuing tort. The opinion of the court quoted several authorities as follows:

" 'What is perhaps regarded as the most significant concept in psycho-analytical therapy, and one of the most important discoveries of Freud, is the emotional reaction of the patient toward the analyst known as the *transference* . . .', Modern Clinical Psychiatry, Noyes & Kolb, 6th Ed., 1963, p. 505.

" 'Inappropriate emotions, both hostile and loving, directed toward the physician are recognized by the psychiatrist as constituting a special aspect of the patient's neurosis—the transference. The psychiatrist looks for manifestations of the transference, and is prepared to handle it as it develops.' Melvin S. Heller, M. D., Some Comments to Lawyers on the Practice of Psychiatry, 30 Temple University Law Quarterly 401, 402.

" '[T]ransference . . . In psychiatry, the shifting of an affect from one person to another . . . especially the transfer by the patient to the analyst of emotional tones, either of affection or of hostility . . .' Dorland's Illustrated Medical Dictionary, 23rd Ed., 1957, p. 1454.

" '. . . Transference may be *positive,* when the feelings and reactions are affectionate, friendly, or loving. . . . Understanding of transference forms a basic part of the psychoanalytic technique.' Blakiston's New Gould Medical Dictionary, 2nd Ed., 1956, p. 1260." (Footnote 1, p. 755.)

Counsel for the appellant contends, when the alleged facts are given credence for the purposes of the motion, it becomes a question for the trier of fact to determine when the fact of injury became reasonably ascertainable to the plaintiff under K. S. A. 1970 Supp. 60-513 (4).

If the petition be construed as an action for sexual assault during 1965, 1966 and 1967 (not asserted by the appellant in her brief) even if not discovered or reasonably ascertainable by the plaintiff until March 7, 1969, it is barred by the one-year statute of limita-

tions applicable to actions for assault (K. S. A. 60-514 [2]), or, if she asserts a legal disability, it is barred upon plaintiff's failure to bring the action within one year after the removal of the disability (K. S. A. 1971 Supp. 60-515 [a].)

K. S. A. 1971 Supp. 60-513 in pertinent part provides:

"The following actions shall be brought within two (2) years:  . . .

. . . . . . . . . . . . . . . . .

"(4) An action for injury to the rights of another, not arising on contract, and not herein enumerated.

. . . . . . . . . . . . . . . .

"The cause of action in this section shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall the period be extended more than ten (10) years beyond the time of the act giving rise to the cause of action."

Of the four possible periods of limitations applicable to an action based upon negligence the first and most common period begins from the date of the injury. Here the defendant ceased being the plaintiff's doctor on April 25, 1967, and his negligence ceased on that date. The two-year period of limitations from April 25, 1967, would have expired on April 26, 1969, thus barring the instant action filed on March 27, 1970. (60-513 [4], *supra*.)

The second possible period of limitation begins when the act giving rise to the cause of action first causes substantial injury. (60-513 [4], *supra*.) On April 25, 1967, the plaintiff began treatment with Dr. E. H. Trowbridge, Jr., a psychiatrist at Kansas City, Missouri. She was admitted to Research Hospital for two months, there receiving numerous electro-shock and insulin shock treatments. She then received outpatient treatment consisting of shock treatments and was admitted to Osawatomie State Hospital on April 3, 1968, where she remained until June 10, 1968, when placed on convalescent leave until her discharge on March 7, 1969.

According to the plaintiff's petition she first contacted the defendant on or about September 1, 1964, complaining of headaches and other physical ailments. These conditions continued through the balance of 1964, all of 1965 and 1966 and until April 25, 1967. The aggravation of these conditions and the aggravation of her preexisting mental condition as alleged in the petition have previously been stated. After reviewing these allegations with the dates stated, it is quite obvious that the acts, if any, giving rise to

the cause of action first caused substantial injury no later than April 25, 1967, in which case the period of limitation expired on April 26, 1969. This would bar the instant action filed on March 27, 1970.

The third possible period of limitation begins when the fact of injury becomes reasonably ascertainable. But this period is not applicable unless the condition precedent stated in 60-513 is met— "if the fact of injury is not reasonably ascertainable until some time after the initial act."

The record clearly reflects the fact of injury was ascertained no later than April 25, 1967, by her family, her psychiatrist, and herself, when, having changed doctors, she began a new course of treatment. This, together with her complaints and physical participation in the events prior and subsequent to April 25, 1967, shows an awareness on her part of the fact of injury, *unless she was under a legal disability by reason of incapacity.*

Counsel for plaintiff in arguing the motion to dismiss before the trial court asserted the plaintiff was not claiming she was incompetent or insane, but that her mental illness, nevertheless, made her unable to ascertain the fact of her injury.

The mere statement by the plaintiff that she was unable to ascertain the fact of her injury until March 7, 1969, is insufficient to raise a genuine issue of fact concerning the statute of limitations. Where the injured party does not assert legal incapacity as a cause for delay in commencing an action in court, such injured party stands in the position of a person possessing the attributes of a person with legal capacity, when confronted with the two-year statute of limitations in a negligence action.

In *Hartman v. Stumbo,* 195 Kan. 634, 408 P. 2d 693, the plaintiff brought an action charging fraud against an attorney. The court found the plaintiff's statement that she had not discovered the fraud until less than two years before the action was filed was insufficient to create an issue of fact, where it appeared she had earlier become dissatisfied with the defendant's service and engaged a new attorney.

If it be assumed that the plaintiff was not under legal disability, the condition in the statute has been fulfilled. The fact of injury under the allegations of the petition had become reasonably ascertainable to the plaintiff on April 25, 1967, and the action was barred on April 26, 1969.

The legislature in recognizing the need to protect persons in a case such as this, where the fact of injury is reasonably ascertainable by others but not by the injured party, provided that persons under a legal disability shall be entitled to bring their action within one year after such disability has been removed. (K. S. A. 1971 Supp. 60-515 [a].) This is the fourth possible period of limitation applicable to the cause of action alleged.

A person under legal disability is an "incapacitated person" as defined in K. S. A. 77-201 (31) and K. S. A. 1971 Supp. 59-3002 (1).

It is not necessary that the injured party be legally adjudicated an "incapacitated person," as defined in the above statutes, before receiving protection extended to such persons under the statute of limitations. (*Lantis v. Davidson*, 60 Kan. 389, 56 Pac. 745.)

K. S. A. 1971 Supp. 60-515 provides in part:

"Persons under legal disability. (*a*) *Effect.* If any person entitled to bring an action, other than for the recovery of real property or a penalty or a forfeiture, at the time the cause of action accrued, or at any time during the period the statute of limitations is running, be within the age of twenty-one (21) years, or an incapacitated person, or imprisoned for a term less than his natural life, such person shall be entitled to bring such action within one (1) year after such disability shall be removed, but no such action shall be maintained by or on behalf of any person under the disabilities specified after twenty-two (22) years from the time the cause of action shall have accrued."

The obvious reason the plaintiff contends in her brief that she did not allege a legal disability is that her cause of action would be barred by the one-year statute of limitations. She alleged a discharge from the Osawatomie State Hospital on March 7, 1969, and her cause of action would be barred on March 8, 1970.

The statement of the plaintiff that she was unable to ascertain the fact of her injury until March 7, 1969, the affidavit of Dr. Trowbridge placed before the trial court in argument on the motion to dismiss, and the statements of counsel, establish that the plaintiff was under a legal disability prior to March 7, 1969. Obviously, the plaintiff cannot take advantage of the fact that she was unable by reason of mental illness to ascertain the fact of her injury until March 7, 1969, and thereby seek to take advantage of the two-year statute of limitations (citing *Miller v. Beech Aircraft Corporation*, 204 Kan. 184, 460 P. 2d 535), by calling upon a jury to determine the matter as a question of fact, and at the same time take an inconsistent position to circumvent the one-year statute of limitations in 60-515 (*a*) by denying in argument that she is an incapacitated person.

*Miller v. Beech Aircraft Corporation,* supra, relied upon by the appellant, is inapplicable to the case at bar. In that case there was substantial medical evidence to show the injury complained of (emphysema) was "progressive in nature, without external or visible sign, and [that it] may remain latent for many years." (p. 188.) In the opinion the court said:

"Without getting into specifics, we incline to the belief it was for the jury to determine in this case when plaintiff's disabling disease and its cause became manifest or when, in the exercise of due care, the same was reasonably ascertainable. . . ." (p. 189.)

In the instant case, which involves mental and physical illness, the injuries alleged, complaints made and treatment received, as previously related, were by their nature acute and easily ascertainable. The allegations in the petition merely show that the plaintiff was unable to ascertain them because of mental illness.

The belated discovery provision in 60-513, *supra,* was obviously intended to apply to situations where the injury itself is of such a nature that it could not reasonably be ascertained until sometime after the commisison of the act which caused it. (Gard, Kansas Code of Civil Procedure Annotated, § 513, p. 533.)

In conclusion the record here presented discloses as a matter of law that the plaintiff's cause of action was barred at the latest on April 26, 1969, if the first three periods of limitation heretofore discussed are applicable, or on March 8, 1970, if the plaintiff was under a legal disability until March 7, 1969. The petition not having been filed until March 27, 1970, the trial court did not err in sustaining the defendant's motion to dismiss.

Since our decision turns on a question of law, consideration of the appellant's second point, challenging the refusal of the trial court to disqualify in the case, becomes immaterial.

The judgment of the lower court is affirmed.