No. 101,146

MACIE MARTIN, Individually and as Representative of the Estate of CURLEY MARTIN, Deceased, *Appellant*, v. SANDIP NAIK, M.D., and SPECIALTY HOSPITAL OF MID-AMERICA, *Appellees*.

(300 P.3d 625)

Opinion filed May 3, 2013.

*Stephen G. Dickerson*, of The Dickerson Law Group, of Olathe, argued the cause and was on the briefs for appellant Macie Martin.

*Timothy P. McCarthy*, of Gilliland & Hayes, P.A., of Overland Park, argued the cause and was on the briefs for appellee Sandip Naik, M.D.

*Roger W. Slead*, of Horn, Aylward & Brandy, LLC, of Kansas City, Missouri, argued the cause, and *Richard M. Acosta*, of the same firm, was with him on the briefs for appellee Specialty Hospital of Mid-America.

*Per Curiam*: This appeal raises issues regarding when the statute of limitations begins to run in a wrongful death and survival action brought against a physician and hospital. We first determine that a cause of action for wrongful death accrues on the date of death unless information regarding the fact of death or the wrongful act that causes the death was concealed, altered, falsified, inaccurate, or misrepresented. Second, in construing K.S.A. 60-513(c), which controls when the statute of limitations period begins to run in a medical malpractice action, we hold that the legislature stated an objective standard when it provided that a cause of action accrues at the time of the occurrence of the act giving rise to the cause of action "unless the fact of injury is not reasonably ascertainable." Consequently, the fact a particular patient is incapacitated, which would be a subjective factor, does not affect whether the fact of injury was reasonably ascertainable.

## Facts and Procedural Background

Macie Martin, both individually and as the representative of the estate of her husband, Curley Martin (Curley), filed a lawsuit against defendants Sandip Naik, M.D., and Specialty Hospital of Mid-America (Hospital), in which she raised wrongful death and survival claims based on alleged medical malpractice. Both defendants filed motions for summary judgment in which they argued the statute of limitations barred both causes of action. The relevant facts were uncontroverted for purposes of the motions. In the order granting the defendants summary judgment, the district court made the following findings and conclusions:

On March 31, 2004, Curley, who was diabetic, was admitted to the Hospital under Naik's care. At that time, Curley "was unable to participate in his care" because of his medical condition.

On April 7, 2004, a nurse who was an employee of the Hospital administered insulin to Curley. Martin, who was at Curley's bedside, observed the nurse having difficulty and then heard another nurse say that the nurse who administered the insulin "did not know how to perform that care for him or was struggling to competently perform that care." Curley's condition became more serious, and Martin alleges the Hospital's employees failed to com-

petently assess Curley's condition after the faulty insulin administration and failed to notify Naik of the deterioration in Curley's condition.

Nevertheless, "[t]hese perceived deficiencies did not . . . result in actionable harm until the morning of April 8, 2004, when [Curley's] condition[] had greatly deteriorated." Curley "suffered irreversible brain damage and other injuries." On April 8, Martin and her daughters had Curley "emergently transferred" to Shawnee Mission Medical Center (SMMC). It is alleged the Hospital and Naik negligently delayed the transfer.

While Curley was at SMMC, a physician told Martin and her family that the Hospital's staff allowed Curley to go into a diabetic coma and essentially killed him. Although Curley's "catastrophic conditions were stabilized at SMMC and he was subsequently moved to at least one other care facility before his death, he remained from April 8, 2004, until his death [on] October 25, 2004, incapacitated."

On the second anniversary of Curley's death, Martin filed suit. After limited discovery, the Hospital and Naik filed motions for summary judgment, arguing that Martin's claims were barred by the 2-year limitation period provided by K.S.A. 60-513(a)(5) and (a)(7).

In granting the Hospital's and Naik's motions, the district court concluded Martin's "causes of action here for medical negligence in the survival action and the wrongful death claim accrued April 8, 2004," the last date on which the defendants' negligence could have occurred and the date on which Curley's injuries were first reasonably ascertainable. Further, the court found a 2-year statute of limitations applied under K.S.A. 60-513(a)(5) and (a)(7). As a result, the court concluded that, unless the statute of limitations was tolled, both the survival and wrongful death claims expired on April 8, 2006, more than 6 months before Martin filed suit. The district court noted there was a potential for tolling because Curley was disabled. Nevertheless, the court concluded that K.S.A. 60-515, the tolling provision relating to disabled parties, would only have extended the limitation period 1 year past Curley's death—to October 25, 2005. Because the tolling provision effectively short-

ened the limitation period, the district court concluded the tolling provision should not be applied. Consequently, the district court agreed with the Hospital's and Naik's assertions and found that the wrongful death and survival causes of action were barred when this case was filed on October 25, 2006.

*Court of Appeals' Decision*

The Court of Appeals reversed the district court's order in *Martin v. Naik*, 43 Kan. App. 2d 591, 228 P.3d 1092 (2010). The court held that neither Martin's wrongful death action nor the survival action was barred by the 2-year limitation period provided by K.S.A. 60-513(a)(5) and (a)(7).

With regard to the wrongful death claim, the Court of Appeals concluded that the basis for Martin's lawsuit did not accrue, and thus the statute of limitations did not begin to run, until Curley's death. Martin's wrongful death action, therefore, was timely because it was filed within 2 years of the death. *Martin*, 43 Kan. App. 2d at 602.

As to the survival action, the Court of Appeals determined Curley's medical condition rendered him unable to reasonably ascertain the fact of his injury. Consequently, the court considered the disability tolling provision in K.S.A. 60-515. The court concluded:

"[B]ecause Curley could not reasonably ascertain the fact of his injury, his medical malpractice claim (the survival action) did not accrue so as to start the statute of limitations clock running until his death, so the 2-year limitation period of K.S.A. 60-513 did not commence to run at any time during the period of Curley's incapacity. The relevant portion of K.S.A. 60-515, its tolling provision, stops the clock that is running on an accrued but unfiled cause of action. Here, the clock was not running. It had not yet started. There was nothing for the statute to toll." *Martin*, 43 Kan. App. 2d at 600.

The court held that Naik and the Hospital were not entitled to summary judgment on either claim. Based on its ruling, the Court of Appeals reversed and remanded the case for further proceedings. *Martin*, 43 Kan. App. 2d at 605.

Naik and the Hospital filed petitions for review, which this court granted. This court has jurisdiction under K.S.A. 20-3018(b) (petition for review).

## ANALYSIS

In a negligence action, summary judgment is generally proper if the only questions presented are questions of law. *Thomas v. Board of Shawnee County Comm'rs*, 293 Kan. 208, 220-21, 262 P.3d 336 (2011). Here, the district court granted summary judgment to the defendants by applying legal conclusions regarding the application of the statute of limitations to uncontroverted facts. On appeal to the Court of Appeals, neither party contended there was a genuine issue of material fact that precluded summary judgment, leading the Court of Appeals to consider only issues of law under a de novo or unlimited standard of review. *Martin*, 43 Kan. App. 2d at 593.

In supplemental briefs filed after the petition for review was granted, Martin argues there is a question of fact. She now suggests Curley's injury was not reasonably ascertainable until the physician at SMMC told Martin and other family members of the long-lasting effects of Curley's injury. This point in time—the date on which a reasonable person would have ascertained Curley's injury—is the date on which the statute of limitations began to run, at least according to the defendants and the district court. Hence, this potential question of fact is material. Yet, Martin did not make this contention in her briefs before the Court of Appeals or in her petition for review. Consequently, it is not properly before us. *State v. Kelly*, 295 Kan. 587, 600, 285 P.3d 1026 (2012) (waiver of issue and preclusion of appellate review can occur by failure to raise issue before lower court, failure to raise issue in appellate brief, or failure to raise issue in petition for review). As such, we accept the district court's use of April 8, 2004, as the date on which the defendants' alleged malpractice was reasonably ascertainable, that is when viewed from an objective standard of a reasonable person. We also note that Martin does not suggest that using this later point in time would make the filing of this action timely if the defendants and district court are correct about the statute of limitations beginning to run on the date a reasonable person—as opposed to an incapacitated person such as Curley—would have ascertained the existence of the injury.

For his part, Naik does not suggest that there are controverted and material facts, but he does suggest that the Court of Appeals

erred in applying a de novo standard of review to this case. He contends an appellate court "should be limited to determining whether it was reasonable to grant summary judgment based upon the uncontroverted statements of fact. . . . [R]eview should be limited to conclusions of law." For support Naik cites *Nicholas v. Nicholas*, 277 Kan. 171, 83 P.3d 214 (2004).

Examination of *Nicholas* reveals that it does not support Naik's invocation of a reasonableness standard of review implying district court discretion. Instead, the *Nicholas* court stated: "In this case, the material facts are not in dispute. Rather, it is the legal conclusions of the trial court and the Court of Appeals that are at issue. Our review of conclusions of law is unlimited." *Nicholas*, 277 Kan. at 177. This conclusion is consistent with a long line of cases that establish an appellate court's review of a district court's grant of summary judgment where the facts are uncontroverted, including one based on a statute of limitations defense, is unlimited and de novo. *Godley v. Valley View State Bank*, 277 Kan. 736, 741, 89 P.3d 595 (2004); *Duarte v. DeBruce Grain, Inc.*, 276 Kan. 598, 602, 78 P.3d 428 (2003); see *Kelly v. VinZant*, 287 Kan. 509, 514-15, 197 P.3d 803 (2008) (application of statute of limitations).

Naik also contends the Court of Appeals went outside the record to conclude Curley was comatose and then repeatedly referred to his comatose state. See, *e.g.*, *Martin*, 43 Kan. App. 2d at 598-99. Even if the Court of Appeals' description of Curley's condition was improper, the significant point was that Curley was incapacitated, and Naik does not dispute the district court's determination that Curley was incapacitated from April 8, 2004, until his death.

We, therefore, begin our analysis with five essential and, for purposes of analyzing the district court's summary judgment decision, undisputed facts in mind. Those are: (1) The first date on which there was alleged negligence that caused injury to Curley was April 7, 2004; (2) alleged acts of negligence occurred on April 8, 2004, when there was a failure to properly diagnose Curley's condition and to expediently arrange his transfer to SMMC; (3) the fact of injury was reasonably ascertainable on April 8, 2004; (4) Curley was unable to personally ascertain his injury because he was incapacitated from April 8, 2004, until his death on October 25,

2004; and (5) this wrongful death and medical malpractice survival action was filed by Martin on October 25, 2006.

The controversy in this appeal is how to apply the statute of limitations in K.S.A. 60-513 to those facts. Issues of statutory interpretation and construction raise questions of law reviewable de novo on appeal. *Shrader v. Kansas Dept. of Revenue*, 296 Kan. 3, Syl. ¶ 1, 290 P.3d 549 (2012); *State v. Brown*, 295 Kan. 181, 193-94, 284 P.3d 977 (2012).

## WRONGFUL DEATH ACTION

The statute of limitations for a wrongful death action is found in K.S.A. 60-513(a)(5). That provision simply states: "The following actions shall be brought within two years: . . . [a]n action for wrongful death." The question of when that time period begins to run is answered by K.S.A. 60-513(b), (c), or (d). K.S.A. 60-513(c) applies in this case because it relates to causes of action arising from alleged medical malpractice. It states:

"A cause of action arising out of the rendering of or the failure to render professional services by a health care provider shall be deemed to have accrued at the time of the occurrence of the act giving rise to the cause of action, unless the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall such an action be commenced more than four years beyond the time of the act giving rise to the cause of action."

Clearly, there are different points in time at which a cause of action could accrue under this subsection, which means that there are different points in time at which the statute of limitations could begin to run. It is equally clear that one of those points in time is the "occurrence of the act giving rise to the cause of action."

What is not clear in a wrongful death action is whether the act that gives "rise" to the cause of action is the death itself or the wrongful act that caused the death. The plaintiff and the Court of Appeals took the position that the cause of action did not arise until the date of Curley's death or, alternatively, that the fact of injury, while previously predictable, was not actually ascertainable until that date. For support, the Court of Appeals primarily relied on

*Natalini v. Little*, 278 Kan. 140, 92 P.3d 567 (2004); *Davidson v. Denning*, 259 Kan. 659, 914 P.2d 936 (1996); *Mason v. Gerin Corp.*, 231 Kan. 718, 721, 647 P.2d 1340 (1982); and *Nesbit v. City of Topeka*, 87 Kan. 394, 124 P. 166 (1912). On the other hand, the defendants and the district court took the position that the act giving rise to the cause of action occurred on April 7, 2004, the date of the first act of alleged negligence or, alternatively, on April 8, 2004, when it was reasonably ascertainable by others that Curley had been injured by that negligence. This court's decision in *Crockett v. Medicalodges, Inc.*, 247 Kan. 433, 799 P.2d 1022 (1990), supports this position.

In the face of conflicting decisions by this court, we begin our determination of which line of cases is correct by considering the oldest of these cases—*Nesbit*. There, we find a clear statement that a wrongful death action accrues at the time of the decedent's death. In *Nesbit*, the issue was whether a wrongful death action was barred because the City of Topeka had not been timely notified of the accident that eventually caused the death. The City argued notice was required by a statute that declared no person could file suit for damages against a city unless notice of the injury had been given to the city within 4 months of the injury. Neither the injured party nor his surviving spouse had filed a notice within 4 months of the accident that caused the initial injury, and the death that resulted from the injury occurred more than 4 months after the accident. To determine whether the surviving spouse was required to give notice within 4 months of the fatal injury, this court reviewed the wrongful death statutes and, based on the wording of those statutes, concluded:

"The damages recoverable by a widow in such an action are for her loss caused by the death of her husband. A cause of action accrued to him when he was injured. A cause of action accrued to her at his death.. [Citations omitted.] She was not the person injured and so was not required to give the notice provided by the statute within the four months' period." *Nesbit*, 87 Kan. at 395-96.

In this discussion, the *Nesbit* court discussed a version of the wrongful death act that predates the current act found at K.S.A. 60-1901 *et seq*. Nevertheless, *Nesbit* is helpful to our analysis because the two versions of the wrongful death act are substantively

the same in all respects material to the question before us. K.S.A. 60-1902 states that a wrongful death action "may be commenced by any one of the heirs at law of the deceased who has sustained a *loss by reason of the death.*" (Emphasis added.) In addition, the recoverable losses, as defined by the Kansas Legislature, are not those suffered by the deceased but are the pecuniary and nonpecuniary damages incurred by an heir at law, including such things as bereavement, loss of society, loss of marital care, loss of filial care, loss of parental care, and reasonable funeral expenses that result from the decedent's death. K.S.A. 60-1903; K.S.A. 60-1904. Under these statutes, it is the decedent's death that gives rise to the cause of action and it is the heir's injury that must be ascertainable.

Applying these clear legislative statements and relying on *Nesbit*, this court has repeatedly held that a right of action under K.S.A. 60-1901 *et seq.* for wrongful death accrues no earlier than the date of the decedent's death, even though the decedent's cause of action for an underlying tort accrued at an earlier point in time. In these cases, we distinguished between the accrual of a survival action, which is brought on behalf of the decedent's estate, and the accrual of a wrongful death action, which is brought by the decedent's heirs at law. For example, in *Mason*, this court stated:

"A survival action allows the personal representative to recover damages accrued by the injured party between the date of injury and death for the benefit of the decedent's estate. On the other hand, the wrongful death action authorized by 60-1901 *et seq.*, is for the exclusive benefit of the heirs, and allows them to recover damages accruing after death for such things as loss of support, companionship and mental anguish." *Mason*, 231 Kan. at 721.

See *Ingram v. Howard-Needles-Tammen & Bergendoff*, 234 Kan. 289, 301, 672 P.2d 1083 (1983) (Schroeder, C.J., dissenting) ("survival action *compensates the decedent* for the injuries for which he could have recovered had he survived, whereas the wrongful death action compensates the heirs for such things as loss of support, companionship and comfort"); *Farm & City Ins. Co. v. American Standard Ins. Co.*, 220 Kan. 325, 337, 552 P.2d 1363 (1976) (survival and wrongful death actions are "separate and distinct types of action"; the "survival statute authorizes recovery of damages

accruing between the injury and the death of the injured person", and the wrongful death action is "for the exclusive benefit of all the heirs who have sustained loss, and damages . . . accruing after death").

Despite these attempts at clarification, confusion has persisted, apparently because of the impact of a qualifying condition—or condition precedent—to a wrongful death action. This condition is stated in K.S.A. 60-1901, which provides:

> "If the death of a person is caused by the wrongful act or omission of another, an action may be maintained for the damages resulting therefrom *if the former might have maintained the action had he or she lived*, in accordance with the provisions of this article, against the wrongdoer, or his or her personal representative if he or she is deceased." (Emphasis added.)

In *Mason*, this court explained that the qualifying condition stated in the emphasized phrase means "that where the injured party could not have brought an action for his personal injuries because the statute of limitations had run against his claim prior to his death, a wrongful death action cannot be maintained." *Mason*, 231 Kan. at 725. Under the facts of the case, the statute of limitations had run on the decedent's cause of action before his death. Hence, the qualifying condition was not met and a wrongful death action could not be brought.

In discussing the impact of the qualifying condition, the *Mason* court explained that the application of the qualifying condition was a different question than the accrual of the cause of action for wrongful death. The court emphasized the "decision does not involve the statute of limitations applicable to the plaintiff's wrongful death action" because the wrongful death cause of action "accrues to the heirs at the death of the injured party." *Mason*, 231 Kan. at 722. This point was reiterated 14 years later in *Davidson*.

The *Davidson* court considered two consolidated wrongful death appeals in which there arose a question of whether the 2-year statute of limitations began to run at the date of death or sometime later, when investigations into the causes of death were under way. One case arose from medical malpractice and another from a car accident. In both cases, it was alleged that the fact of injury was

not reasonably ascertainable at the time of death but at a later point in time.

The *Davidson* court recognized two points at which a wrongful death action can accrue: The first was the time of death and the second was after death when the fact of injury became reasonably ascertainable. The court explained that the fact of death should be a " 'starting point for inquiry,' " and "[t]he limitations period should start on the date of death unless the information from which the fact of death or negligence can be determined was either concealed, altered, falsified, inaccurate, or misrepresented." *Davidson*, 259 Kan. at 678; see, *e.g.*, *P.W.P. v. L.S.*, 266 Kan. 417, 425, 969 P.2d 896 (1998) (citing *Davidson* with approval); Annot., 97 A.L.R.2d 1151, § 5 (in most wrongful death cases decided under statutes providing that the period of limitation shall be computed from " 'accrual of the cause of action' or from the 'time the cause of action accrues,' " the view is that the cause of action accrues at time of death). The court concluded that under the facts of both cases, there was no reason to believe there had been an alteration or concealment of records or any other misrepresentation. Thus, the causes of action accrued on the date of death. *Davidson*, 259 Kan. at 671-72, 676, 678.

These decisions in *Nesbit*, *Mason*, and *Davidson* are consistent with the wrongful death act provisions found in K.S.A. 60-1901 *et seq.* Nevertheless, this court reached a different conclusion in *Crockett*, 247 Kan. 433, the case relied on by the defendants and the district court, when it held the statute of limitations period that applies to a wrongful death action can begin to run before the death.

*Crockett* arose from a lawsuit alleging negligence in the care of a nursing home resident. The petition was filed more than 2 years from the last date of treatment at the nursing home—the last date on which negligence could have occurred—but within 2 years of the date of death.

On appeal, this court acknowledged the holding in *Mason* and stated that the qualifying condition in K.S.A. 60-1901 was not an obstacle to the success of the lawsuit because the statute of limitations had not expired at the time of the death. *Crockett*, 247 Kan.

at 440 (citing *Mason*, 231 Kan. at 725). Nevertheless, instead of applying the statement in *Mason* that a wrongful death action accrues at the date of death, the *Crockett* court discussed a federal district court case, *Brubaker v. Cavanaugh*, 542 F. Supp. 944 (D. Kan. 1982), *aff'd* 741 F.2d 318 (10th Cir. 1984), and concluded: "Under *Brubaker*, the latest date the wrongful death claim could have accrued in the present case was not the date of [the decedent's death], but . . . the date [the decedent] was discharged by" the defendants from their medical care. *Crockett*, 247 Kan. at 441.

In reaching this conclusion, the *Crockett* court not only strayed from this court's prior analysis, it misread *Brubaker*. The outcome in *Brubaker* was not determined by the 2-year statute of limitations on wrongful death claims, see K.S.A. 60-513(a)(5), but on the qualifying condition in K.S.A. 60-1901 and the 4-year repose provision in K.S.A. 60-513(c). The *Brubaker* court first determined when the act that gave rise to the cause of action occurred. Then, because there were arguments regarding the potential tolling of the statute of limitations, the court determined the latest date on which a lawsuit could have been filed without being barred by the statute of repose in K.S.A. 60-513(c). This date was several years before the decedent's death. *Brubaker*, 542 F. Supp. at 947. Finally, the court concluded that K.S.A. 60-1901 created an "interface" between K.S.A. 60-513(c) and the wrongful death action because the qualifying condition in K.S.A. 60-1901 required an analysis of when the decedent's cause of action accrued and whether the statute of limitations had run by the date of death. *Brubaker*, 542 F. Supp. at 948. *Brubaker* did not link this analysis to the statute of limitations that applies to a wrongful death action, however.

Consequently, as to wrongful death actions, *Brubaker* simply reaffirmed that a wrongful death action cannot be brought if the decedent's medical malpractice action was barred at the time of his or her death. The *Brubaker* court did not conflate the determination of whether the qualifying condition was met with the determination of when a wrongful death action accrued as did the *Crockett* court. Hence, the *Crockett* court's reliance on *Brubaker* for the concept that a wrongful death action accrues before death was misplaced. Additionally, the *Crockett* court failed to recognize

that *Brubaker* was consistent with *Mason* in its application of the qualifying condition in K.S.A. 60-1901 and in distinguishing the qualifying condition from the accrual of the wrongful death action for statute of limitations purposes. See *Brubaker*, 542 F. Supp. at 948. As a result, *Crockett* cannot be reconciled with the holdings in *Nesbit, Mason,* and *Davidson, i.e.,* the starting point for the accrual of a wrongful death action is the date of death.

The Court of Appeals in this case resolved the conflict in the decisions of this court by focusing on *Natalini,* which was decided after *Crockett* and which followed the line of cases holding that a wrongful death action accrues at the date of death. *Natalini* did not explicitly overrule *Crockett,* however. *Natalini,* 278 Kan. at 142-43.

*Natalini* arose after Joseph Natalini brought a medical malpractice action for failure to diagnose his lung cancer. In November 1996, while monitoring nodules in Natalini's lung, the defendant doctor negligently failed to follow up with Natalini about a computerized tomography scan in which a new nodule was revealed. Natalini was eventually diagnosed with lung cancer. He filed a lawsuit in July 2000 when the 4-year repose period in K.S.A. 60-513(c) was about to expire. By the time of trial in June 2002, Natalini was predicted to have only 8 months to live. Therefore, Natalini sought damages at trial for his family's bereavement, mental anguish, loss of protection and advice, and the loss of his support and household services which he anticipated would be suffered upon his death—damages characterized as part of an " 'anticipatory wrongful death' claim." *Natalini,* 278 Kan. at 142.

On appeal, this court determined the anticipatory wrongful death damages were not recoverable in Natalini's medical malpractice action. In doing so, this court recognized the qualifying condition in K.S.A. 60-1901 and the previous holding in *Mason*—if the injured person's personal injury claim is time barred before his or her death, the heirs' wrongful death claim is also barred—and refused Natalini's request to fashion a way around the combined effect of K.S.A. 60-513(c) and K.S.A. 60-1901, in hopes of permitting Natalini's family to somehow collect on an anticipatory wrongful death claim. The *Natalini* court stated:

"In circumstances like Natalini's, even if a malpractice plaintiff's premature death is highly likely to be caused by the malpractice, plaintiff's survival for more than 4 years [repose period] beyond the negligent act means no wrongful death action will ever be possible. K.S.A. 2003 Supp. 60-513(c) and K.S.A. 60-1901 will combine to cut it off *before it can accrue, i.e., before the death giving rise to the action has occurred.* Although family members of the patient would qualify at the time of death as heirs at law entitled to seek recovery in a wrongful death suit, see K.S.A. 60-1902, they would be prevented from bringing an action because 60-513(c)'s repose language would have barred the injured patient's own [underlying] lawsuit before his or her death. [Citations omitted.]" (Emphasis added.) *Natalini*, 278 Kan. at 143.

In this appeal, the Court of Appeals focused on the words emphasized in this quotation—"before it can accrue, *i.e.*, before the death giving rise to the action has occurred"—that linked accrual of a wrongful death action with the date of death, not before. In light of those words, the Court of Appeals concluded *Natalini* supported the validity of the principle declared in *Davidson*—the fact of death should be a " ' "starting point for inquiry" ' "—and concluded that the limitation period simply cannot begin to run before the wrongful death cause of action comes into being. *Martin v. Naik*, 43 Kan. App. 2d 591, 605, 228 P.3d 1092 (2010) (quoting *Davidson*, 259 Kan. at 666). The Court of Appeals further distinguished the qualifying condition in K.S.A. 60-1901 and concluded that "once the wrongful death condition precedent is met (the decedent's right to sue had he or she lived), the statute of limitations for the decedent's personal injury action *has no further effect* on the wrongful death action, *which has its own statute of limitations* and which begins to run on the date of death." (Emphasis added.) *Martin*, 43 Kan. App. 2d at 604.

In reaching this conclusion, the Court of Appeals panel in this case reached a different conclusion from that of other Court of Appeals panels who have applied *Crockett's* holding that the wrongful death statute of limitations begins running before death if the injury is reasonably ascertainable before that time. See, *e.g.*, *Kelley v. Barnett*, 23 Kan. App. 2d 564, 571, 932 P.2d 471, *rev. denied* 262 Kan. 961 (1997); *Yadon v. Dennett*, No. 99,247, 2008 WL 5401419, at *21 (Kan. App. 2008) (unpublished opinion).

Despite this growing line of cases, we agree with the *Martin* court that the wrongful death action does not accrue before the death that is the basis for the action. There are several reasons for our conclusion.

First, while a wrongful death claim is conditioned on the ability of the decedent to bring an action, such a claim is distinct from the claims the decedent could have brought had he or she lived. *Natalini*, 278 Kan. at 143. A wrongful death action is a claim of the heirs at law, and neither the plaintiffs—the heirs at law—nor the nature of their damages can be determined until the death occurs. Hence, an action brought before the death would be brought by potential heirs, not known heirs. Further, an action brought before death would necessarily be seeking speculative or conjectural damages, which as a general rule are not recoverable, while an action brought after death could seek damages that are reasonably certain and, therefore, recoverable. See *Miller v. Johnson*, 295 Kan. 636, 677, 289 P.3d 1098 (2012) (stating general rules regarding degree of certainty required for damages to be recoverable).

Second, because an anticipatory wrongful death action cannot be brought, an accrual of the action before death would be unreasonable. For example, if a decedent passed away just 1 day before the statute of limitations expired, an heir at law would have only 1 day to file his or her cause of action. This would be an unreasonable interpretation of the accrual provision in K.S.A. 60-513(c), and it is a fundamental rule of statutory construction that courts are to avoid unreasonable results when applying statutory language. *Kansas One-Call System v. State*, 294 Kan. 220, 233, 274 P.3d 625 (2012).

Finally, the rule reiterated in multiple Kansas cases—indicating that the date of death begins the inquiry unless the date is extended because of factors such as concealment of the fact of death, or concealment or falsification of, or alteration or misrepresentation in the decedent's medical records—would be placed by the wayside. See, *e.g.*, *Davidson*, 259 Kan. 659, Syl. ¶ 2. Yet, the *Crockett* court did not overrule these cases.

Consequently, we conclude the decision in *Crockett* was an aberration in this long line of cases and its reasoning was faulty. We

overrule *Crockett* and disapprove of any language in that opinion and its progeny, including *Kelley*, 23 Kan. App. 2d 564, and *Yadon*, 2008 WL 5401419, stating that the statute of limitations on wrongful death actions begins to run before the date of death. The inquiry into whether the wrongful death qualifying condition in K.S.A. 60-1901 is met—whether the decedent would have had a right to bring an underlying tort action had he or she lived—is a separate inquiry from determining the date that triggers the wrongful death action. We reiterate and hold that the 2-year statute of limitations under K.S.A. 60-513(a)(5) that governs a wrongful death action "should start on the date of death unless the information from which the fact of death or negligence can be determined was either concealed, altered, falsified, inaccurate, or misrepresented." *Davidson v. Denning*, 259 Kan. 659, Syl. ¶ 2, 914 P.2d 936 (1996); see *Mason v. Gerin Corp.*, 231 Kan. 718, 722, 647 P.2d 1340 (1982).

As applied to the facts of this case, the underlying medical malpractice claim was not time barred at the time of Curley's death; hence, the wrongful death qualifying condition was met. The limitation period for Martin's wrongful death action began running on the date of Curley's death because there was no allegation of concealment or misrepresentation. Consequently, Martin's wrongful death action was not time barred when filed 2 years to the day after Curley's death.

We, therefore, affirm the Court of Appeals' holding on this point and reverse the district court.

## Survival Action

Both defendants also contend that the Court of Appeals erred in concluding that the medical malpractice survival action was not time barred. See *Martin*, 43 Kan. App. 2d at 597-98. According to the defendants, the district court was correct in its conclusion that the limitation period began to run approximately 6 months before Curley's death, on April 8, 2004, when the fact of injury—that Curley "had suffered substantial and catastrophic injures"—was objectively ascertainable and actually known to Curley's wife Martin. Thus the survival action had to be brought by April 8, 2006,

regardless of the fact that Curley was incapacitated on the date of injury.

Martin responds by agreeing with the Court of Appeals and contending that before the statute of limitations could start to run on the underlying medical malpractice action, the injury had to be reasonably ascertainable to Curley. See *Martin*, 34 Kan. App. 2d at 599. Because Curley was incapacitated from April 8, 2004, until his death, the period of limitation on this survival action could not have started until his death on October 25, 2004. Thus, according to Martin, because the survival action was filed within 2 years of Curley's death, it was timely.

Although the parties take different roads of analysis, they begin at the same point and in agreement that the date on which a statute of limitations runs for a survival cause of action is the date the decedent's cause of action for medical malpractice accrues. This is because, unlike a wrongful death action, a "survival action, as it is called, is not a new cause of action. It is rather the cause of action held by the decedent immediately before or at death, now transferred to his personal representative." Prosser & Keeton, Law of Torts § 126, p. 942 (5th ed. 1984); see *Ingram*, 234 Kan. at 301 (Schroeder, C.J., dissenting); *Mason*, 231 Kan. at 721. The decedent's estate has the right to bring the claim on the decedent's behalf because the Kansas Legislature, through K.S.A. 60-1801, declared that the decedent's claim survived, providing:

"In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to the person, or to real or personal estate, or for any deceit or fraud, or for death by wrongful act or omission, shall also survive; and the action may be brought notwithstanding the death of the person entitled or liable to the same."

Consequently, as we apply K.S.A. 60-513(c), we must consider Curley to be the "injured party."

To better understand the implications of Curley being the injured party, it is helpful to break K.S.A. 60-513(c) into three parts. The first states a general rule: A medical malpractice action "shall be deemed to have accrued at the time of the occurrence of the act giving rise to the cause of action." The second part states an exception: The statute of limitations begins to run at the time of

the act "unless the fact of injury is not reasonably ascertainable until some time after the initial act." The third part provides the test for when the statute of limitations begins to run if the exception applies: "[T]hen the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the *injured party*." (Emphasis added.) While each of these provisions seems clear when read separately, when they are read together the legislative intent is far from clear. Because the statute's language is ambiguous, we "employ canons of construction, legislative history, or other background considerations to divine the legislature's intent and construe the statute accordingly. [Citation omitted.]" *Stewart Title of the Midwest v. Reece & Nichols Realtors*, 294 Kan. 553, 564-65, 276 P.3d 188 (2012).

Construing K.S.A. 60-513(c), the district court reasoned that an objective standard should be applied to determine both when the exception applies and when the fact of injury became ascertainable to the injured party. Under this analysis, the district court, in essence, placed a reasonable person—one who was not incapacitated—in place of Curley and asked if that reasonable person would have ascertained the fact of injury. This led to the conclusion the survival action accrued on April 8, 2004.

The Court of Appeals, on the other hand, concluded the cause of action did not accrue on that date because "Curley had no capacity to apprehend that he had a claim and no ability to do anything about it." *Martin*, 43 Kan. App. 2d at 598. The Court of Appeals reasoned that Curley's incapacity was significant because it is one of the surrounding circumstances that should be considered in determining whether the fact of injury was reasonably ascertainable under this court's analysis in *Davidson* and other cases. In *Davidson*, for example, this court explained: " 'The term "reasonably ascertainable" as applied in 60-513(b) and (c) in a wrongful death action suggests an objective standard based on an examination of the surrounding circumstances.' " *Martin*, 43 Kan. App. 2d at 599 (quoting *Davidson*, 259 Kan. at 669).

The defendants, in urging us to agree with the district court, argue the Court of Appeals made the second part of K.S.A. 60-513(c)—the "unless the fact of injury is not reasonably ascertain-

able" phrase—into a subjective test. The defendants note that this phrase does not mention the injured party. They further argue that the legislature's failure to mention the injured party means an objective standard is used to determine if the fact of injury was reasonably ascertainable at the time of the occurrence of the act giving rise to the cause of action. Under this interpretation of the statute, Curley's incapacity does not come into play in determining if the exception applies.

Further, the defendants note that the legislature has provided that a cause of action may accrue while a person is under a legal disability. K.S.A. 60-515(a) states in part that "if any person entitled to bring an action . . . *at the time the cause of action accrued* or at any time during the period the statute of limitations is running, *is . . . an incapacitated person*, . . . such person shall be entitled to bring such action within one year after the person's disability is removed." (Emphasis added.) Likewise, under K.S.A. 60-515(b), if "any *person entitled to bring an action* dies during the continuance of any disability specified in subsection (a) and no determination is made of the cause of action accrued to the deceased," a claim may be filed by the appropriate representative within 1 year of the decedent's death. (Emphasis added.) See *Bonin v. Vannaman*, 261 Kan. 199, 205, 929 P.2d 754 (1996) (where medical malpractice occurred when plaintiff was a minor, K.S.A. 60-515[a] allows filing within 1 year of reaching majority; no consideration of whether plaintiff's legal disability meant statute of limitations did not begin to run during minority).

The defendants argue there was no reason for the legislature to enact K.S.A. 60-515 if the statute of limitations, K.S.A. 60-513, would never run during a period of legal disability. This argument ignores the reach of K.S.A. 60-515, which is broader than K.S.A. 60-513. K.S.A. 60-515 applies to all actions except those covered by a similar statute, K.S.A. 60-508; actions to recover damages as a result of childhood sexual abuse subject to K.S.A. 60-523; actions to recover real property; actions to recover a penalty, or actions to recover a forfeiture. K.S.A. 60-515(a). Thus, it applies to statutes that do not include an ascertainment-of-injury or discovery provision. See, *e.g.*, K.S.A. 60-511; K.S.A. 60-512; K.S.A. 60-514; *cf. Law*

*v. Law Company Building Assocs.*, 295 Kan. 551, 575, 289 P.3d 1066 (2012) (holding that discovery exception of K.S.A. 60-513[a][3] does not apply to a claim for reformation of a contract based on mutual mistake).

The defendants' arguments have merit, however, because, at least as to the application of the second part of K.S.A. 60-513(c), which creates the exception, they argue for a plain reading of the statute as it is written. Thus, the argument applies a well-known rule of statutory interpretation and construction, which is that we consider the plain language of the statute, giving ordinary words their ordinary meanings. *Eastman v. Coffeyville Resources Refining & Marketing*, 295 Kan. 470, 473, 284 P.3d 1049 (2012). In contrast, Martin and the Court of Appeals suggest a reading of the statute that requires adding the words "to the injured party" into the second part of K.S.A. 60-513(c). Generally, we ascertain the legislature's intent through the statutory language it uses, and we will not read a statute to add something not readily found in it. *State v. Guder*, 293 Kan. 763, 766-67, 267 P.3d 751 (2012). This court's decision of *Seymour v. Lofgreen*, 209 Kan. 72, 495 P.2d 969 (1972), which is not cited or discussed by the parties or the Court of Appeals, supports the conclusion that the words "to the injured party" should not be read into the second part of K.S.A. 60-513(c).

Instead, the *Seymour* court explained that the use of the words "reasonably ascertainable" in the exception "was obviously intended to apply to situations where the injury itself is of such a nature that it could not reasonably be ascertained until sometime after the commission of the act which caused it. [Citation omitted.]" *Seymour*, 209 Kan. at 79. The court distinguished between injuries that are " 'progressive in nature, without external or visible sign, and . . . latent' " and those that are " 'manifest' " or "acute." *Seymour*, 209 Kan. at 79 (quoting *Miller v. Breech Aircraft Corporation*, 204 Kan. 184, 188-89, 460 P.2d 535 [1969]).

The *Seymour* court noted that the situation in the case it was deciding did not involve progressive or latent injuries. Instead, "the injuries alleged . . . were by their nature acute and easily ascertainable. The allegations in the petition merely show that the plaintiff was unable to ascertain them because of mental illness." *Sey-*

*mour*, 209 Kan. at 79. The mental illness meant the plaintiff was an incapacitated person, which caused the court to consider the application of K.S.A. 60-515. The court held that K.S.A. 60-515 defined the applicable limitation period when a plaintiff is unable to ascertain the fact of injury because he or she is under a legal disability or is an incapacitated person as defined in K.S.A. 77-201, *Thirty-first*. The court concluded:

> "The legislature in recognizing the need to protect persons in a case such as this, where the fact of injury is reasonably ascertainable by others but not by the injured party, provided that persons under a legal disability shall be entitled to bring their action within one year after such disability has been removed. (K.S.A. 1971 Supp. 60-515 [a].)" *Seymour*, 209 Kan. at 78.

See *Fletcher v. Holcomb*, 142 Kan. 177, 181-82, 45 P.2d 1053 (1935) (legal disability "does not operate to prevent a cause of action from arising in favor of the one under disability"; instead, there is a "specific statute applicable to persons under disability which permits the action to be brought within one year after the disability is removed").

Because Seymour did not file her cause of action within 1 year of the removal of her disability or within 2 years of the defendant's alleged malpractice, the court held her action was barred by the statute of limitations. *Seymour*, 209 Kan. at 79.

In *Seymour*, the court applied K.S.A. 60-513(b) rather than K.S.A. 60-513(c), which applies in this case. This is because K.S.A. 60-513(c) had not yet been adopted. See *Stephens v. Snyder Clinic Ass'n*, 230 Kan. 115, 118, 631 P.2d 222 (1981) (discussing legislative history of K.S.A. 60-513[c]). Because of the differences between K.S.A. 60-513(b) and (c), some portions of the *Seymour* decision no longer apply in actions against health care providers; for example, K.S.A. 60-513(c) does not trigger the running of the limitation period upon "substantial" injury. Nevertheless, the exception regarding reasonable ascertainment of injury in both K.S.A. 60-513(b) and (c) are substantially the same. Therefore, the *Seymour* decision provides persuasive, if not binding, authority for the conclusion that the exception requires application of an objective standard to determine whether the fact of injury is reasonably ascertainable.

In this case, the date on which the fact of injury was reasonably ascertainable was April 8, 2004. This is also the last date on which alleged malpractice occurred and thus was the date on which at least some of the acts giving rise to the action occurred. Because the dates coincide, we conclude the exception was not triggered under the unique facts of this case—the fact of injury was reasonably ascertainable when the act that gave rise to the cause of action occurred. Consequently, we need not examine the third part of K.S.A. 60-513(c) to determine whether an objective standard applies or whether the words "the injured party" in this portion of the statute are to be read out of the provision as was effectively done by the district court in this case and this court in *Seymour*.

Further, we need not resolve whether the specific provisions of K.S.A. 60-515 mean the action had to be brought within 1 year of Curley's death or whether the action could be brought within 2 years of April 8, 2004, under K.S.A. 60-513(c). Either way, the survival action in this case was barred by the statute of limitations.

We, therefore, reverse the Court of Appeals' holding regarding the statute of limitations applicable to the survival action and affirm the district court.

The Court of Appeals' reversal of the district court's order granting summary judgment for the defendants on the wrongful death claim is affirmed and remanded to the district court for further proceedings. The Court of Appeals' reversal of the district court's order granting summary judgment for the defendants on the medical malpractice survival claim is reversed.

\* \* \*

JOHNSON, J., concurring: I concur in the results reached by the majority on both the wrongful death and survival actions. I write separately with respect to the survival action and the interpretation of K.S.A. 60-513(c) for two reasons. First, I disagree with the apparent holdings of the majority that the period of limitation was running against Curley while he was in a coma and that the provisions of K.S.A. 60-515 were not applicable here. Second, I perceive some fallacies in the reasoning of the Court of Appeals opinion and the dissent in this case which the majority opinion did not address.

My fundamental disagreement with both the majority and dissent is that they equate the accrual of a cause of action with the running of a statute of limitations on that cause of action. The plain language of K.S.A. 60-513(c) speaks to both the time when the "cause of action . . . shall be deemed to have accrued" and when the "period of limitation . . . shall . . . commence." Moreover, using the Court of Appeals' own language, albeit in a different context, we commonly think of a cause of action accruing " 'when the plaintiff first had the right to file and prosecute the action to a successful conclusion.' " *Martin v. Naik*, 43 Kan. App. 2d 591, 597, 228 P.3d 1092 (2010) (quoting *Mason v. Gerin Corp.*, 231 Kan. 718, 722, 647 P.2d 1340 [1982]). Then, we frequently deal with scenarios where a cause of action has accrued but the statute of limitations has been tolled. In other words, they are different concepts. Moreover, it would seem to me that K.S.A. 60-513(c) contains a great deal of surplus language if the legislature simply intended the period of limitation for a medical malpractice action to always commence at the same time that the cause of action accrued.

I read the majority opinion as conflating the concepts of cause of action and period of limitation when it parses K.S.A. 60-513(c) into three parts and suggests that they all deal with when the "statute of limitations begins to run." 297 Kan. at 297. My question is, if the legislature intended K.S.A. 60-513(c) to address the sole question of when the period of limitation begins, why did it specifically speak to the time when the cause of action was deemed to have accrued and why did it include two consecutive phrases about the fact of injury not being reasonably ascertainable? Ordinarily, we presume the legislature does not intend to enact superfluous, meaningless, or redundant legislation. See *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 322, 255 P.3d 1186 (2011).

In my view, it is more logical to divide the statute into two parts, one dealing with the accrual of the cause of action and the other establishing the running of the limitation period. The first part would read, in relevant part, that "[a] *cause of action* . . . [for medical malpractice] . . . shall be deemed to have accrued at the time of the occurrence of the act giving rise to the cause of action,

unless the fact of injury is not reasonably ascertainable until some time after the initial act." (Emphasis added.) K.S.A. 60-513(c). After one has determined when the cause of action accrues—either when the act occurred or when the fact of injury was reasonably ascertainable—the next inquiry is laid out in the second part: "[T]hen the *period of limitation* shall not commence until the fact of injury becomes reasonably ascertainable to the injured party." (Emphasis added.) K.S.A. 60-513(c). Pointedly, the statute does not say that the period of limitation commences when the cause of action is deemed to have accrued.

By utilizing the plain language approach, *i.e.*, the first part deals with the "cause of action" and the second part addresses the "period of limitation," we can avoid the objective versus subjective dilemma that troubles my colleagues and we can give meaning to the redundant phrases about the fact of injury being reasonably ascertainable. We do that by reading the statute as establishing an objective criterion for the accrual of the cause of action, the same way that this court did in *Seymour*, when it held that "[t]he belated discovery provision in 60-513 . . . was obviously intended to apply to situations where the injury itself is of such a nature that it could not reasonably be ascertained until sometime after the commission of the act which caused it." *Seymour v. Lofgreen*, 209 Kan. 72, 79, 495 P.2d 969 (1972). If the fact of injury is reasonably ascertainable by anyone, *e.g.*, a duly appointed conservator for a disabled injured party, then the cause of action against the health care provider has accrued so that an action *could* be filed and successfully prosecuted.

But the commencement of the *period of limitation* (as opposed to the accrual of the cause of action) *is* based on the subjective knowledge of the injured party, *i.e.*, the time during which the lawsuit *must* be filed does not begin to run on the accrued cause of action until the fact of injury is reasonably ascertainable to the injured party. Here, that would mean that the statute of limitations was tolled for Curley as long as he was in a coma and unable to know he had been injured. That is not to say that Curley's representative, next friend, or guardian *ad litem* could not file and successfully prosecute a medical malpractice suit while Curley is still

alive, but comatose, because the cause of action had accrued on April 8, 2004. See, *e.g.*, K.S.A. 60-217(c) ("If a minor or incapacitated person does not have a duly appointed representative the minor or incapacitated person may sue by the minor or incapacitated person's next friend or by a guardian *ad litem.*"). But as the Court of Appeals declared, the cause of action belongs to Curley, not his wife or representative, so that he could not be personally barred by the statute of limitations while he is unable to ascertain the fact of injury. *Martin*, 43 Kan. App. 2d at 599.

This interpretation is not only what the statute plainly says, but it comports with the provisions of K.S.A. 60-515, which address the running of the statute of limitations for persons under legal disability. See *Redd v. Kansas Truck Center*, 291 Kan. 176, 195, 239 P.3d 66 (2010) (appellate courts must consider various provisions of an act in pari materia with view of reconciling and bringing provisions into workable harmony, if possible). That statute provides, in relevant part:

"(a) *Effect* Except as provided in K.S.A. 60-523, if any person entitled to bring an action, other than for the recovery of real property or a penalty or a forfeiture, at the time the cause of action accrued or at any time during the period the statute of limitations is running, is . . . an incapacitated person . . . , such person shall be entitled to bring such action within one year after the person's disability is removed, . . . .

"(b) *Death of person under disability.* If any person entitled to bring an action dies during the continuance of any disability specified in subsection (a) and no determination is made of the cause of action accrued to the deceased, any person entitled to claim from, by or under the deceased, may commence such action within one year after the deceased's death." K.S.A. 60-515.

The majority notes that K.S.A. 60-515 has broad application beyond the type of action involved in this case, at least intimating that it might not apply to a medical malpractice action because of the specific provisions in K.S.A. 60-513(c). But the plain language of K.S.A. 60-515(a) only excludes the application of its provisions from one statute, K.S.A. 60-523, and only excludes specified causes of action which are not applicable here. It makes no difference whether K.S.A. 60-515 was intended to apply to more than just medical malpractice actions, so long as the plain language of the

statute makes a medical malpractice action one of those to which its provisions apply.

In the case before us, K.S.A. 60-515(a) does not control because Curley's disability was not removed, prior to his death. Rather, Curley or his representative was "entitled to bring an action" after the April 8, 2004, act of malpractice, but he died while under a disability set forth in subsection (a) and with "no determination . . . made of the cause of action accrued to [Curley]," which gave "any person entitled to claim from, by or under [Curley]" the right to "commence such action within one year after [Curley's] death." K.S.A. 60-515(b). Therefore, the statute of limitations began to run on the survival action for Curley's damages on the date of his death but ran for only 1 year thereafter.

Accordingly, I would interpret K.S.A. 60-513(c) and K.S.A. 60-515(b) in harmony and apply them to the facts of this case as follows: Curley's cause of action accrued on April 8, 2004, because the fact of his injury was objectively ascertainable on that date; the period of limitation did not begin to run against Curley personally while he was alive but comatose because the fact of injury was not subjectively ascertainable by him; the period of limitation began to run against the person who succeeded to Curley's cause of action on the date of Curley's death and expired 1 year after death. Therefore, the successor's filing of the survival action approximately 1½ years after Curley's death was barred by the plain language of K.S.A. 60-515(b).

The dissent does not apply K.S.A. 60-515(b) as it is plainly written because it believes that the provision cannot be employed to shorten the limitation period of K.S.A. 60-513(c). I would submit that 60-515 would not operate to shorten the 60-513(c) limitation period for Curley, because under the dissent's subjective interpretation of 60-513(c), no limitation period ever commenced against him personally. Indeed, under the Court of Appeals' rationale, the cause of action did not even accrue until death. If Curley is deemed to have been incapable of reasonably ascertaining the fact of his injury while in a coma, his death did not cure that disability. A dead person can no more ascertain the fact of injury than a person who

is in a coma, which would mean that the limitation period never begins to run.

I do not discern an explanation by the dissent as to why death triggers the commencement of the 60-513(c) 2-year limitation period. Similarly, the dissent does not say why the legislature must give a person that inherits or acquires a cause of action the same limitation period as the decedent would have had if alive and not under disability. A rather fundamental principle of statutory construction is that we are to apply provisions as they are written, not as we think they should be applied to achieve the results we would like to see. See *Kenyon v. Kansas Power & Light Co.*, 254 Kan. 287, 292-93, 864 P.2d 1161 (1993) (courts cannot delete vital provisions or supply vital omissions in statute; only legislature can correct such defects). Furthermore, we have demonstrated recently that we need not follow prior caselaw that ignored, contradicted, or misconstrued plain statutory language. See, *e.g.*, *State v. Berry*, 292 Kan. 493, Syl. ¶ 6, 254 P.3d 1276 (2011) (rejecting court-made rule that contradicted plain language of statute); *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 525, 154 P.3d 494 (2007) (rejecting 80-year-old precedent that did not follow key tenet of statutory construction prohibiting adding language not found in statute).

The Court of Appeals' explanation was that

"[u]pon Curley's death, his medical negligence claim became an asset of his estate. At the time the fact of injury was reasonably apparent to the estate, the successor-injured party, thereby causing the survival action for medical malpractice to accrue and the running of the period of limitation to commence pursuant to K.S.A. 60-513(c)." *Martin*, 43 Kan. App. 2d at 597.

While it may sound good at first, that rationale cannot withstand closer scrutiny.

I will begin by presuming that the term "estate" was intended to refer to a decedent's estate, as opposed to a conservatorship estate, trust estate, partnership estate, *etc.*, because, otherwise, the knowledge acquisition that the panel attributes to the "estate" would have occurred during Curley's lifetime. Next, the panel's rationale that Curley's "estate" had the legal responsibility to pursue the collection of Curley's personal assets only works if one assumes that death automatically gives rise to the creation of a legal

entity that is entitled to hold and administer all of the decedent's assets on behalf of the ultimate heirs and legatees. But that is not the case, as evidenced by the plethora of provisions contained in the Kansas Probate Code, K.S.A. 59-101 *et seq.*, where actions are commenced by a petition. K.S.A. 59-103(b). Indeed, in today's world of probate-avoidance estate planning it is probably the exception, rather than the rule, for a surviving spouse to instigate formal probate administration proceedings that would result in the appointment of an executor or administrator. In other words, the establishment of a decedent's estate for Curley upon his death was no more required, or even likely, than the establishment of a conservatorship estate while he was living, but comatose.

Even if a personal representative is created for a decedent, the panel does not explain why that invests the estate with the requisite legal knowledge of the fact of injury. Here, if that personal representative is Curley's wife, she had the same knowledge when she was a potential conservator as when she became a potential executrix or administratrix. Moreover, a personal representative steps into the shoes of the person represented, but the panel would have it the other way around, with the deceased person acquiring the representative's personal knowledge.

More importantly, the panel's theory of knowledge acquisition by a deceased injured party through the personal knowledge of a putative personal representative of a potential decedent's estate is not founded on any statute, but rather it is a fabrication to justify declaring that the cause of action did not accrue during Curley's lifetime. That declaration is necessary to refute the plain language of K.S.A. 60-515, but it cannot survive scrutiny either. If the cause of action did not accrue until the statute of limitations began to run and the statute of limitations did not begin to run until Curley's death, then Curley's wife could not have brought suit while her husband was still alive. As the Court of Appeals declared, Curley *is the injured party in the survival action, not his wife. Martin,* 43 Kan. App. 2d at 597. Therefore, the wife would have to find some resource, other than the tortfeasor, to provide the wherewithal to pay for her husband's assisted living care for however long he might linger before his death triggered the accrual of a medical malprac-

tice claim. But, of course, as noted above, that is simply not true; a suit *could* have been filed and prosecuted to a successful conclusion any time from and after April 8, 2004, by Curley's representative, next friend, or guardian *ad litem*. K.S.A. 60-217.

To reiterate, I would find, pursuant to K.S.A. 60-513(c), that Curley's medical malpractice claim accrued when the fact of injury was objectively ascertainable, which was on April 8, 2004, but that the period of limitation in that statute never commenced because the fact of injury was never reasonably ascertainable by the injured party, Curley. Instead, because Curley died while suffering under a disability contemplated by K.S.A. 60-515(a), the period of limitation set forth in K.S.A. 60-515(b) applied, giving those entitled to claim from, by, or under the deceased 1 year from the date of death to commence the action. Because the action was not commenced within that statute of limitations, it was barred.

NUSS, C.J., joins in the foregoing concurring opinion.

\* \* \*

LUCKERT, J., concurring in part and dissenting in part: I concur with the majority's holding that Macie Martin's cause of action for wrongful death was not barred by the statute of limitations. However, I respectfully dissent from the holding that the survival action she brought as a personal representative of the Estate of Curley Martin is barred.

In my view, K.S.A. 60-513(c) must be read as a whole and the words "the injured party" must be given meaning. The majority's construction of the statute, following *Seymour v. Lofgreen*, 209 Kan. 72, 495 P.2d 969 (1972), makes these words meaningless. On the other hand, the Court of Appeals gave the words meaning by applying *Davidson v. Denning*, 259 Kan. 659, 914 P.2d 936 (1996), and its holding that " '[t]he term "reasonably ascertainable" as applied in 60-513(b) and (c) in a wrongful death action suggests an objective standard based on an examination of the surrounding circumstances.' 259 Kan. at 669." *Martin v. Naik*, 43 Kan. App. 2d 591, 598, 228 P.3d 1092 (2010).

*Davidson* and similar decisions harmonize the seemingly disparate concepts contained in the phrase "reasonably ascertainable to

the injured party." The words "reasonably ascertainable" suggest an objective standard, while the phrase "to an injured party" suggests a subjective one. When faced with such a disparity and resulting ambiguity, "it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible." *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, Syl. ¶ 2, 69 P.3d 1087 (2003). While the majority determines that this reconciliation would require adding the words "to the injured party" into the exception stated in the second part of K.S.A. 60-513(c), the majority's analysis is equally objectionable because it essentially deletes those same words from the third part of the statute. The construction of the statute adopted by this court in *Davidson* does neither and reconciles the provisions by allowing consideration of the injured party's circumstances.

In examining Curley's circumstances, one of the obvious considerations was his incapacity. Considering all of the circumstances, the fact of injury was not reasonably ascertainable by someone in Curley's situation. Consequently, I would conclude that the statute of limitations for Curley's cause of action for medical malpractice did not "commence" on April 8, 2004, and was not running before Curley's death. I reach this conclusion by applying each of the three parts of K.S.A. 60-513(c) as written.

The first part of the statute instructs us that a medical malpractice action "shall be deemed to have accrued at the time of the occurrence of the act giving rise to the cause of action." While this phrase does not explain what is meant by "the act giving rise to the cause of action," the second phrase directs us to look at the initial act by stating "unless the fact of injury is not reasonably ascertainable until some time after the *initial* act." (Emphasis added.) By delaying the accrual of the cause of action, K.S.A. 60-513(c) deviates from the general rule that "a cause of action accrues, so as to start the running of the statute of limitations, as soon as the right to maintain a legal action arises." *Pancake House, Inc. v. Redmond,* 239 Kan. 83, 87, 716 P.2d 575 (1986); see *Puckett v. Mt. Carmel Regional Med. Center,* 290 Kan. 406, 420, 228 P.3d 1048 (2010) (elements of medical malpractice action are: [1] health care pro-

vider/patient relationship giving rise to duty of care; [2] provider's breach of duty by deviation from applicable standard of care; [3] injury to patient; and [4] proximate relationship between breach of duty and injury). In this case, this means the action did not accrue at the initial act.

By operation of the first two parts of K.S.A. 60-513(c), Curley's cause of action did not accrue at the time of the occurrence of the initial act of negligence because, under the uncontroverted facts, the fact of injury was not reasonably ascertainable until some time later—the next day. Then, because the exception stated in the second part of the statute is triggered, we must consider the third part of the statute. This part of the statute directs that "the period of limitation *shall not commence* until the fact of injury becomes reasonably ascertainable *to the injured party.*" (Emphasis added.) It is uncontroverted that the fact of injury was not reasonably ascertainable to Curley before his death. Hence, I would hold that the limitation period was not commenced before that date.

This reading of K.S.A. 60-513(c) reconciles the language of each part of the provision and does not frustrate the purpose of the statute of limitations, which is to "preclud[e] presentation of stale claims and encourag[e] diligence on the part" of the injured party. *Welch v. City of Kansas City*, 204 Kan. 765, 771, 465 P.2d 951 (1970). The statute of repose embedded in K.S.A. 60-513(c), which provides for a relatively short time period of 4 years, is designed to prevent that from occurring while allowing for situations such as this case where the cause of action does not accrue and the period of limitation does not commence for a significant period of time after the initial wrongful act is committed.

Additionally, I disagree with the concurring justices' reliance on K.S.A. 60-515. The plain language of K.S.A. 60-515 limits the statute's application to situations where the injured party is incapacitated "at the time the cause of action *accrued* or at any time during the period the statute of limitations *is running.*" (Emphasis added.) Here, because the fact of injury was not reasonably ascertainable to Curley, the cause of action did not accrue, the period of limitation had not commenced, and the period of limitation was not running.

Even if K.S.A. 60-515 applies, it should not be used to shorten the statute of limitations to 1 year after Curley's death. In *Smith v. Yell Bell Taxi, Inc.*, 276 Kan. 305, 308-09, 75 P.3d 1222 (2003), this court held that "K.S.A. 60-515 extends the statute of limitations . . . and cannot be applied to shorten it. . . . [P]laintiffs suffering from a short-term legal incapacity, such as being in a coma, need not apply K.S.A. 60-515 unless it will extend the statute of limitations." Following the *Smith* court's analysis, I would reconcile K.S.A. 60-515 and the otherwise applicable statute of limitations— in this case K.S.A. 60-513(a)(7), (c). In doing so, I would hold that those who were entitled to make a claim on behalf of Curley had 2 years from the date his disability no longer tolled the commencement of the statute of limitations in which to file this action. In summary, because the estate's representative filed this action within 2 years of Curley's death, I would affirm the Court of Appeals' conclusion that the survival action was not barred by the statute of limitations and would reverse the district court.

ROSEN and BILES, JJ., join in the foregoing concurring and dissenting opinion.